**PAUL E. IACONO STRUCTURAL ENGINEER, INC., Plaintiff-Appellee,**

v.

**Robert R. HUMPHREY, etc., et al., Defendants-Appellants.**

No. 81-4360.

United States Court of Appeals, Ninth Circuit.

Submitted Sept. 17, 1982.

Decided May 3, 1983.

Certiorari Denied Oct. 3, 1983.

See 104 S.Ct. 162.

Robert L. Zaletel, Littler, Mendelson, Fastiff & Tichy, San Francisco, Cal., for defendants-appellants.

Blythe Mikelson, Van Bourg, Allen, Weinberg & Roger, San Francisco, Cal., for plaintiff-appellee.

Before FLETCHER and BOOCHEVER, Circuit Judges, and KENYON,* District Judge.

KENYON, District Judge:

This is an appeal from a final order of the district court disqualifying the law firm representing the defendants in an action based on alleged unfair labor practices of the defendants. The district court disqualified the firm on the ground that one of

* Honorable David V. Kenyon, United States District Judge for the Central District of California, sitting by designation.

the attorneys of the firm, prior to his employment by the firm, had been a staff attorney to the National Labor Relations Board (NLRB) and in that capacity had investigated the same unfair labor practices that are the subject of this action. We have jurisdiction under 28 U.S.C. § 1291 (1976) and affirm.[1]

## FACTS

In the spring of 1978, plaintiff-appellee Paul E. Iacono Structural Engineer, Inc. (Iacono) filed several unfair labor practice charges with the NLRB. Iacono contended that secondary picketing and leafleting by several labor unions at one of Iacono's job sites violated section 8(b) of the National Labor Relations Act, 29 U.S.C. § 158(b) (1976). Iacono also filed an unfair labor practice charge against Carpenters Local Union No. 1622 (Local 1622), a member of defendant Alameda Building and Construction Trades Council (Alameda) for refusing to cross the picket lines of defendants.

Together with several other NLRB attorneys, Paul Supton was assigned to investigate Iacono's charges and prepare them for trial. He became actively involved in the investigation of several of the charges and interviewed and took statements from a number of Iacono's key employee-witnesses. A statement taken by Supton from a job superintendent at Iacono's job site, for example, describes in detail the interruptions in work caused by defendants' secondary picketing and distribution of leaflets. Similarly, another statement taken by Supton from an employee of Iacono describes among other things picketing by the defendants on certain dates and the refusal of Local 1622 to cross defendant's picket lines. During the investigation of the charges filed against Local 1622, Supton had numerous discussions with Iacono's attorney regarding the plaintiff company and all aspects of the picketing by the defendants. The record also contains letters from Supton to Iacono's attorney pertaining to the sufficiency of Iacono's evidence against Local 1622 and a proposed settlement.

In the meantime, on May 5, 1978, Iacono filed a complaint against the defendants [2] in federal court, contending that construction delays and other injuries to Iacono's business and property that had resulted from defendants' secondary picketing and leafleting gave rise to a private claim for damages and declaratory relief under section 303 of the Labor Management Relations Act, 29 U.S.C. § 187 (1976). Defendants retained the law firm of Van Bourg, Allen, Weinberg & Roger (Van Bourg) for their defense in the district court action.

On August 4, 1980, Supton left the NLRB and joined Van Bourg as an associate. At the time Van Bourg hired Supton, the firm had no knowledge of Supton's involvement in the Iacono matter while he was at the NLRB. Furthermore, Supton never did any legal work on the Iacono case for the Van Bourg firm and did not make a formal appearance in the action.[3] Nevertheless, the law firm did not prohibit discussions between Supton and other Van Bourg attorneys with regard to the Iacono matter, or otherwise take any measures, formal or informal, to isolate Supton from Van Bourg attorneys working on the Iacono matter in

---

1. An order granting the disqualification of an attorney is appealable immediately as a final collateral order under § 1291. *In re Coordinated Pretrial Proceedings in Petroleum Products Antitrust Litigation,* 658 F.2d 1355, 1358 (9th Cir.1981), *cert. denied,* 455 U.S. 990, 102 S.Ct. 1615, 71 L.Ed.2d 850 (1982).

2. The defendants remaining in the present action are the Construction and General Laborers Union, Local 304 (Local 304) and the Alameda Building and Construction Trades Council (Alameda).

3. While Supton was present at a status conference on March 6, 1981, attended by attorneys for defendants and Iacono at which the case was discussed, both parties agree that Supton did not enter a formal appearance at the conference. The explanation provided by Van Bourg for Supton's presence at the hearing is that Supton had a hearing in an unrelated matter at the same time as the hearing on the Iacono case. After Supton finished with his hearing he came to the Iacono status conference and waited in the audience for Victor J. Van Bourg to finish so that Van Bourg could give Supton a ride back to the office.

order to ensure that Supton's pre-hiring knowledge would not intentionally or accidentally be disseminated to other members of the firm. Nor was he excluded from all financial reward from the case that might be reflected in year-end bonuses or the like.

Over eight months after Supton joined Van Bourg, Iacono filed a motion for an order disqualifying Van Bourg from further representation of the defendants in the Iacono case, claiming that Canon 9 and certain disciplinary rules of the American Bar Association Model Code of Professional Responsibility (the Model Code) mandated disqualification. On June 26, 1981, the district court ordered Van Bourg disqualified. The court held that Supton did not have "substantial responsibility" for the Iacono matter while at the NLRB and thus neither he nor Van Bourg had violated Disciplinary Rule 9–101(B) of the Model Code. Nonetheless, the court held that Van Bourg's representation of the defendants failed to maintain an "appearance of propriety" and thus violated Canon 9 of the Model Code.

## STANDARD OF REVIEW

■ Since the district court has primary responsibility for controlling the conduct of attorneys practicing before it, *Trone v. Smith,* 621 F.2d 994, 999 (9th Cir.1980), an order disqualifying counsel will not be disturbed if the record reveals "any sound" basis for the court's action, *Gas-A-Tron of Arizona v. Union Oil Co. of California,* 534 F.2d 1322, 1325 (9th Cir.), *cert. denied,* 429 U.S. 861, 97 S.Ct. 164, 50 L.Ed.2d 139 (1976). Thus, we will not reverse the district court unless the court either misperceives the relevant rule of law, *Trone,* 621 F.2d at 999, or abuses its discretion, *Gas-A-Tron,* 534 F.2d at 1325 (grant of disqualification motion overturned where facts did not support district court's finding that the prior and present representations were substantially related).

## DISCUSSION

Defendants challenge the disqualification order on four grounds: (1) that the ethical rules applicable to lawyers practicing before the district court do not include the provisions of the Model Code; (2) that, even if the provisions of the Model Code are applicable, Supton's representation of defendants does not create an appearance of impropriety; (3) that, even if Supton must be disqualified, the remainder of the Van Bourg firm need not be disqualified; and (4) that, in any event, Iacono waived its right to secure Van Bourg's disqualification by delaying eight months. We examine these contentions in turn.

### I. *Applicability of Model Code in District Court.*

Defendants argue first that the district court erred in using the provisions of the Model Code to disqualify Van Bourg because the local rules of the Northern District of California, unlike those of other district courts in California, do not specifically adopt the provisions of the Model Code as ethical rules governing the practice of lawyers appearing before that court. We disagree with the conclusion that to have force the Model Code must be specifically adopted.

■ The Model Code is itself not law but rather merely a suggested body of ethical principles and rules upon which reasonable lawyers, concerned about the proper role of the legal profession in American society, have reached a consensus. Since "[a]dvance notice is essential to the rule of law" and since "it is desirable that an attorney or client be aware of what actions will not be countenanced," *In re Coordinated Pretrial Proceedings in Petroleum Products Antitrust Litigation,* 658 F.2d 1355, 1360 (9th Cir.1981), *cert. denied,* 455 U.S. 990, 102 S.Ct. 1615, 71 L.Ed.2d 850 (1982), the provisions of the Model Code, standing alone, present no just basis for disqualification of a lawyer. Until the Model Code is adopted as law by the courts, the legislature, or the regulatory authority charged with the discipline of lawyers in a particular jurisdiction, the canons and disciplinary rules of the Model Code are merely hortatory, not proscriptive. *See id.* at 1359 n. 5 (upholding disqualification based on violation of provi-

sion of Model Code where "the reference to the ABA Code in Local Rule 1.3(d) sufficiently invokes Canon 9 as to make it a basis" for disqualification).

In the federal system, the regulation of lawyer conduct is the province of the courts, not Congress. *See Gas-A-Tron of Arizona v. Union Oil Co. of California,* 534 F.2d 1322, 1324 (9th Cir.1976). In the absence of rules promulgated by higher authorities in the judicial system, the district courts are free to regulate the conduct of lawyers appearing before them. *See id.* at 1325. The local rules of the Northern District of California, unlike those of several other federal districts in California,[4] do not specifically adopt the provisions of the Model Code as ethical rules governing the practice of lawyers before the federal courts in that district. Local Rule 110–3 of the Northern District makes no mention of the Model Code:

> Every member of the Bar of this Court and any attorney permitted to practice in this Court under Local Rule 110–2 shall be familiar with and comply with the standards of professional conduct required of members of the State Bar of California and contained in the State Bar Act, the Rules of Professional Conduct of the State Bar of California and decisions

of any court applicable thereto which are hereby adopted.

N.D.Cal.R. 110–3; *cf. Petroleum Products Antitrust Litigation,* 658 F.2d at 1359 n. 5 (upholding disqualification under Canon 9 where local court rule made explicit reference to Model Code). Nor do the State Bar Act of California and the Rules of Professional Conduct of the State Bar of California, which laws are explicitly referred to in the federal court rule, contain a counterpart to Canon 9 of the Model Code or incorporate the provisions of the Model Code as standards of professional conduct required of California lawyers.[5] Nonetheless, recent decisions of the California courts ruling on the professional standards required of California lawyers use the Model Code as a source of ethical standards to supplement and explicate the principles and rules set forth in the California State Bar Act and Rules of Professional Conduct of the State Bar of California covering certain conduct where the state bar act and rules are imprecise or incomplete. *See, e.g., Chambers v. Superior Court,* 121 Cal.App.3d 893, 898–903, 175 Cal.Rptr. 575, 578–581 (1981); *Chadwick v. Superior Court,* 106 Cal.App.3d 108, 116–18, 164 Cal.Rptr. 864, 868–69 (1980); *Bruno v. Bell,* 91 Cal.App.3d 776, 787–88, 154 Cal.Rptr. 435, 441–42 (1979).[6]

---

**4.** For example, Local Rule 1.3(d) of the United States District Court for the Central District of California provides:

> Every member of the bar of this Court and any attorney permitted to practice in this Court under paragraph (b) hereof shall familiarize himself with and comply with the standards of professional conduct required of members of the State Bar of California and contained in the State Bar Act, the Rules of Professional Conduct of the State Bar of California, and decisions of any court applicable thereto, which are hereby adopted as standards of professional conduct of this Court. *This specification shall not be interpreted to be exhaustive of the standards of professional conduct. In that connection, the Code of Professional Responsibility of the American Bar Association should be noted.* No attorney admitted to practice before this Court shall engage in any conduct which degrades or impugns the integrity of the Court or in any matter interferes with the administration of justice therein.

C.D.Cal.R. 1.3(d) (emphasis added). Local Rule 9(d) of the United States District Court for the Eastern District of California and Local Rule 110–5 of the United States District Court for the Southern District of California also contain specific references to the Model Code as a source of ethical standards for attorneys appearing before the district court. *See* E.D. Cal.R. 9(d); S.D.Cal.R. 110–5.

**5.** Prior to January 1, 1975, the Rules of Professional Conduct of the State Bar of California specifically referred to the ABA Model Code as a source of ethical standards for members of the California Bar. *See* Cal.Bus. & Prof.Code § 6076 app. (Rule 1) (West 1974). Such an explicit reference no longer obtains. *See* Cal. Civ. & Crim.Rules Code (Rules of Prof. Conduct of State Bar of Cal.) R. 1–100, at 532 (West 1981).

**6.** Despite the deletion in 1975 of a reference to the ABA Model Code in the Rules of Professional Conduct of the State Bar of California, *see supra* note 5, the California courts continue

*But cf. People v. Ballard,* 104 Cal.App.3d 757, 761, 164 Cal.Rptr. 81, 83 (1980) (dictum) (stating that "conduct of California attorneys is governed by California Rules of Professional Conduct" *not* ABA Model Code).

■ Since the California courts cite and apply the Model Code as a source of ethical principles and rules governing California lawyers, we believe that the district court's determination that the Model Code is a basis for disqualification under its local rule was not error. *See* N.D.Cal.R. 110–3 (requiring lawyers to comply with "decisions of any court applicable" to "standards of professional conduct" of California lawyers). We therefore reject defendants' argument that the district court misperceived the applicable law when it looked to the Model Code as a source of ethical standards under Local Rule 110–3 of the Northern District of California. *See Petroleum Products Antitrust Litigation,* 658 F.2d at 1360–61.

II. *Supton's Violation of Disciplinary Rule 9–101(B).*

Defendants contend next that even if the provisions of the Model Code are applicable, no violation of the Code standards occurred here. They argue that since a former government attorney is disqualified under Model Code Disciplinary Rule 9–101(B) from participating in a new matter as a private attorney only if he had "substantial responsibility" over the same matter as a public employee and since the district court here concluded that Supton did not have substantial responsibility over the Iacono matter while he was with the NLRB, Supton's disqualification is not required under the Model Code. We disagree.

■ Canon 9 of the Model Code states that "a lawyer should avoid even the appearance of professional impropriety." Model Code Canon 9 (1979). Our court has construed this rule to require disqualification based on prior employment wherever the former representation is "substantially related" to the current representation and the current representation is adverse to the former representation. *Trone v. Smith,* 621 F.2d 994, 998 (9th Cir.1980). A substantial relationship is present "if the factual contexts of the two representations are similar or related," regardless of "whether confidences were in fact imparted to the lawyer by the client" in the prior representation. *Id.* at 998–99. Supton's representation of the defendants clearly meets this test, since the charges he investigated at the NLRB are based on the same incidents that are the subject of this lawsuit and since representation of the defendants is obviously adverse to that of Iacono.[7] If Canon 9 of the Model Code were alone applicable to Supton's

to rely on the Model Code in addressing issues not covered precisely by the Rules of Professional Conduct of the State Bar of California. In *Chambers,* for example, a California appellate court overturned the disqualification of counsel for plaintiffs who were suing the state for negligence, where the attorney had allegedly acquired confidential information regarding the case while in his previous position in the California Department of Transportation, on the ground that the Model Code, as interpreted by the ABA Committee on Ethics and Professional Responsibility Formal Op. 342 (1975), *reprinted in* 62 A.B.A.J. 517 (1976), required disqualification only where the former government attorney had "substantial responsibility" over matters related to the case in his previous governmental position. 121 Cal.App.3d at 903, 175 Cal.Rptr. at 581. Citing *Chadwick v. Superior Court,* 106 Cal.App.3d 108, 164 Cal.Rptr. 864 (1980), the *Chambers* court specifically

stated that the Model Code served to guide California courts in establishing ethical standards. 121 Cal.App.3d at 898 n. 3, 175 Cal. Rptr. at 578 n. 3. Since the power of the state courts in the interpretation of state law is supreme, *Cramp v. Board of Public Instruction,* 368 U.S. 278, 285, 82 S.Ct. 275, 279, 7 L.Ed.2d 285 (1961); *United States v. City of St. Louis, Branch 343,* 597 F.2d 121, 124 (8th Cir.1979), we do not question the policy of the California courts in applying the Code after the state legislature has omitted reference to it.

7. Although Supton's former client was, strictly speaking, the NLRB, in that employment he was called upon to investigate the complaints of Iacono to determine whether the Board should press unfair labor charges against the defendants. In this special circumstance, we find that the actual former "client" for purposes of a disqualification analysis was Iacono.

present representation of defendants, his disqualification would surely be required.

Defendants argue, however, that this court's construction of Canon 9, requiring disqualification wherever prior and present adverse representations are substantially related, should be applied only where the prior representation involved a nongovernmental client, since a disciplinary rule of the Model Code specifically addresses the situation where a lawyer's prior representation occurred while the lawyer was a public employee. Defendants argue that because that rule states that "a lawyer shall not accept private employment in a matter in which he had substantial responsibility while he was a public employee," Model Code DR 9–101(B) (1979), a former government lawyer should not be disqualified absent a clear showing of such "substantial responsibility." [8]

While strong policy reasons may exist for limiting disqualification of former government lawyers to those matters over which they previously exercised substantial responsibility,[9] such considerations may be less applicable or inappropriate when the party seeking disqualification is not the former government agency in which the attorney was employed but a private party from whom the lawyer may have received confidential information while he was in government employment. *Cf. Chambers v. Superior Court,* 121 Cal.App.3d at 903, 175 Cal. Rptr. 575 (1981) (denying disqualification requested by State of California of former California Department of Transportation attorney under "substantial responsibility" test); *Kesselhaut v. United States,* 555 F.2d

791 (Ct.Cl.1977) (denying disqualification requested by FHA of former FHA attorney in lawsuit brought against FHA to recover fees); ABA Comm. on Ethics and Professional Responsibility Formal Op. 342, at 4–5 & n. 14, 11 (1975), *reprinted in* 62 A.B.A.J. 517, 518 & n. 14, 521 (1976) (discussing disqualification solely in terms of whether post-employment restrictions hurt "government more than they help it" and whether "government agency concerned" is satisfied with former government attorney's new representation, without mentioning that in some cases non-governmental interests might be involved).

■ We need not decide in this case, however, whether a former government attorney whose prior representation involved the possible disclosure of confidences by private parties may be disqualified in a future representation under a standard other than the substantial responsibility standard, since the facts here show that Supton had substantial responsibility as an NLRB attorney over the same matter that is the subject of the present action.

While the Model Code does not define "substantial responsibility," the ABA Committee on Ethics and Professional Responsibility has interpreted the term to mean a responsibility which required the former government attorney "to become personally involved to an important, material degree in the investigative or deliberative processes regarding the transactions or facts in question." *See* ABA Comm. on Ethics and Professional Responsibility Formal Op. 342, at 9 (1975), *reprinted in* 62 A.B.A.J. 517, 520 (1976). Under this test,

---

**8.** *See also* Model Code EC 9–3 (1979) ("After a lawyer leaves judicial office or other public employment, he should not accept employment in connection with any matter in which he had substantial responsibility prior to his leaving, since to accept employment would give the appearance of impropriety even if none exists"). We note that the Ethical Considerations under the Model Code are merely aspirational and not mandatory, even in those jurisdictions that have explicitly adopted the Model Code as the code for discipline of its lawyers. *See* Model Code prelim. statement (1979).

**9.** A rule requiring the disqualification of a former government attorney in a new representation not merely where the attorney had substantial responsibility in the same matter while he was a public employee but also where the attorney's prior representation is substantially related to the present representation could hinder the mobility of government attorneys into private practice and thereby penalize public service and make government recruitment more difficult. *See generally* ABA Comm. on Ethics and Professional Responsibility Formal Op. 342, at 4 & n. 14, 10 (1975), *reprinted in* 62 A.B.A.J. 517, 518 & n. 14, 521 (1976).

the trial court's finding that Supton's personal involvement in investigating the Iacono charges while at the NLRB did not amount to substantial responsibility was clearly erroneous. *See* Fed.R.Civ.P. 52(a); *Unified Sewerage Agency v. Jelco,* 646 F.2d 1339, 1351 (9th Cir.1981). Supton's personal involvement in the investigation of Iacono's charges was both important and material in the work of the NLRB. The facts presented in the record clearly show a violation of Disciplinary Rule 9–101(B), thus making the disqualification of Supton proper.

## III. Disqualification of Van Bourg Under Disciplinary Rule 5–105(D).

■ The defendants argue that even if Supton should not be permitted to participate further in the Iacono matter, the entire law firm need not be disqualified. We disagree.

This court has held that an entire law firm must be disqualified when one of its members was counsel for an adverse party in a substantially related matter. *Trone v. Smith,* 621 F.2d 994, 999 (9th Cir.1980). Moreover, Disciplinary Rule 5–105(D) states that "if a lawyer is required to decline employment or to withdraw from employment under a disciplinary rule, no partner, or associate, or any other lawyer associated with him or his firm, may accept or continue such employment." Model Code DR 5–105(D) (1979). Since Supton is disqualified from representation of the defendants in the Iacono matter, disqualification of Van Bourg appears necessary.

Defendants urge, however, that we adopt a limited exception to firmwide vicarious disqualification where the attorney who must be disqualified is "screened" from financial interest and participation in the case. *See generally* Comment, *The Chinese Wall Defense to Lawyer Disqualification,* 128 U.Pa.L.Rev. 677 (1980). They urge that this exception is particularly necessary where the attorney's prior representation was in the capacity of a government employee. *See* ABA Comm. on Ethics and Professional Responsibility Formal Op. 342, at 11–12 (1975), *reprinted in* 62 A.B.A.J. 517, 521 (1976); Murphy, *Vicarious Disqualification of Government Lawyers,* 69 A.B.A.J. 299 (1983).[10]

In *Trone v. Smith,* we left open the question of whether firmwide disqualification would be necessary if such a "Chinese wall" screening procedure were used. 621 F.2d at 999 n. 4. Again, we need not resolve this issue, because the record in this case does not show that any such screening procedure was in place at the Van Bourg firm. Although the record shows that Supton did not work on the Iacono case while at the Van Bourg firm and did not enter a formal appearance in the case, there is no evidence that a "Chinese wall" was in place at the Van Bourg firm. A Van Bourg attorney stated that at the time Supton was hired, the firm had made no effort to determine what matters Supton had handled or been in contact with while at the NLRB and indeed that the firm "never asks" about what was learned at a prior employment. Moreover, there is no evidence of specific measures the firm took to avoid either inadvertent or intentional disclosure of information concerning Supton's involvement with this case either directly or indirectly. Thus, we find the district court did not err in holding the Van Bourg firm disqualified.

## IV. Waiver of Disqualification Claim by Delay.

■ Defendants argue last that plaintiff waived its right to seek disqualification of Van Bourg because it delayed over eight

---

10. On the elements of a "Chinese wall," see generally Comment, *supra,* 128 U.Pa.L.Rev. at 713 (screen should include prohibitions and sanctions against discussion of confidential matters); Murphy, *supra,* 69 A.B.A.J. 299; *Armstrong v. McAlpin,* 625 F.2d 433, 442 (2d Cir.1980) (wall included exclusion from participation in the action, absence of access to relevant files, and rule against discussion of the case in the presence of the ex-government lawyers), *vacated on other grounds,* 449 U.S. 1106, 101 S.Ct. 911, 66 L.Ed.2d 835 (1981); *Kesselhaut v. United States,* 555 F.2d 781, 793 (Ct.Cl. 1977) (per curiam) (screening procedure upheld included exclusion of former attorney from connection with case, absence of access to files, and salary with no participation in firm earnings).

months from Van Bourg's hiring of Supton in August 1980 until requesting disqualification of the firm on April 23, 1981. We disagree.

The record fails to demonstrate that Iacono or its attorneys learned any earlier than late February 1981 that Supton had joined Van Bourg. Since defendants seek to avoid an otherwise proper disqualification of the defendants' law firm, defendants have the burden of making a clear showing of the facts from which a finding of waiver may flow. In light of the showing made here, we have no basis to conclude that Iacono learned of Supton's affiliation with Van Bourg earlier than February 1981.[11] Under these circumstances, the district court did not err in finding six weeks a reasonable time in which to seek a disqualification order and that Iacono did not waive its right to seek disqualification of Van Bourg. *Cf. Trust Corp. of Montana v. Piper Aircraft Corp.,* 701 F.2d 85, 87–88 (9th Cir. 1983) (affirming denial of disqualification request where request made two years and six months after learning of potential ground for disqualification).

## CONCLUSION

We believe the record reveals a "sound basis" for the district court's action in disqualifying defendants' law firm. *Gas-A-Tron of Arizona v. Union Oil Co. of California,* 534 F.2d at 1325. We therefore affirm.

**11.** The record indicates that the attorney presently responsible for the Iacono matter (Robert Zaletel) did not learn from an attorney previously assigned to the case (Mark R. Thierman) of Supton's affiliation with Van Bourg until late February 1981. Although the record shows that Supton's name first appeared on the Van Bourg letterhead in August 1980, it is devoid of any evidence that Iacono or its attorneys took note of the appearance of Supton's name before late February 1981, when Thierman himself learned of and told Zaletel of Supton's affiliation with Van Bourg. *Cf. Trust Corp. of Montana v. Piper Aircraft Corp.,* 701 F.2d 85, 86–88 (9th Cir.1983) (waiver upheld where adverse party was informed of lawyer's new representation and possible conflict immediately upon lawyer's assumption of new representation, two and a half years prior to disqualification motion).