**W.L. GORE & ASSOCIATES, INC. and Gore Enterprise Holdings, Inc., Appellees,**

v.

**INTERNATIONAL MEDICAL PROS-THETICS RESEARCH ASSOCIATES, INC., a/k/a IMPRA, Inc., Appellant.**

**Appeal No. 84–1283.**

United States Court of Appeals, Federal Circuit.

Oct. 17, 1984.

1464

James F. Polese, Phoenix, Ariz., argued, for appellant. With him on the brief were Gerald D.W. North, Chicago, Ill., and P. Douglas Folk, Phoenix, Ariz.

David H. Pfeffer, New York City, argued, for appellee. With him on the brief were J. Robert Dailey and Janet Dore, New York City, of counsel. John S. Campbell, Newark, Del., of counsel. And Donald W. Bivens, Phoenix, Ariz., of counsel.

Before MARKEY, Chief Judge, NIES and NEWMAN, Circuit Judges.

NIES, Circuit Judge.

This is an appeal from an order of the United States District Court for the District of Arizona, entered May 18, 1984. The district court granted a motion by W.L. Gore and Associates, Inc. and Gore Enterprise Holdings, Inc. (collectively, Gore) to disqualify the law firm of Reed, Goldstein, and Jenkins-Reed, P.C., from representing International Medical Prosthetics Research Associates, Inc. (IMPRA). We affirm.

**1.** Appellee, Gore Enterprise Holdings, Inc., is the owner of U.S. Patent No. 4,187,390 (the '390 patent) and appellee, W.L. Gore & Associates, Inc., is the exclusive licensee thereunder. The '390 invention is directed to products and processes involving expanded polytetrafluoroethylene (PTFE).

## Background

Gore commenced this action on April 3, 1984, accusing IMPRA of infringing its U.S. Patent No. 4,187,390.[1] Gore is represented in this action by several law firms including Martori, Meyer, Hendricks and Victor.

IMPRA counterclaimed, alleging violation of 15 U.S.C. §§ 1 and 2 (Sherman Anti-Trust Act) in connection with marketing the subject goods of the parties. IMPRA has been represented by the law firm of McCabe, Polese & Pietzsch, P.A., from at least as early as commencement of this suit through the present time. On April 10, 1984, IMPRA also retained Kenneth Reed and his firm of Reed, Goldstein & Jenkins-Reed, P.C., as co-counsel.

Three days after IMPRA had retained the Reed, Goldstein firm, Gore advised IMPRA orally of its objection to Reed, Goldstein representing IMPRA in this litigation. In a letter of April 18, 1984, Gore formally requested that the firm voluntarily withdraw. The subject motion to disqualify was filed on April 25, 1984, and was granted in an order dated May 18, 1984.

Gore's motion to disqualify the Reed, Goldstein firm charges that both Kenneth Reed and David Goldstein, two of the three name partners in the firm, are tainted from their earlier employment with firms representing Gore against IMPRA in prior related litigation (the '74 action).[2] IMPRA seeks to keep Kenneth Reed and the firm, except for David Goldstein, as its counsel asserting that the record established no conflict as to Reed.

Gore's complaint in the '74 action charged IMPRA and Harold Green, a former Gore employee who is now president of IMPRA, with, *inter alia*, unfair competition by misappropriation of Gore's trade secrets relating to expanded, porous PTFE,

**2.** *W.L. Gore & Associates, Inc. v. International Medical Prosthetics Research Associates, Inc., et al.*, District of Arizona, No. Civ. 74–778 PHX WEC.

particularly as applied to artificial vascular grafts.

IMPRA's counterclaim in the '74 action charged Gore with, *inter alia,* violations of 15 U.S.C. §§ 1 and 2 in connection with such products.

Gore was represented in the '74 action by the Martori firm (one of its present counsel) and also by Brown, Vlassis & Bain (Brown firm). During the time of the '74 action, Reed was a litigation associate in his third and fourth years with the Martori firm. During the same period Goldstein was a first year associate at the Brown firm.

There is no dispute that, at the Brown firm, Goldstein played an active role in representing Gore against IMPRA. During the pendency of the '74 action, Goldstein corresponded directly with Gore and its counsel. Goldstein's signature appears on requests for production of documents, responses to requests for production, answers to interrogatories, stipulations and notices of deposition. Goldstein also met personally with Gore's in-house and outside patent counsel on at least one occasion. IMPRA seeks to save Reed and the rest of the firm from disqualification through Goldstein by screening Goldstein from this case.

With respect to Reed, IMPRA disputes that Reed was tainted by his former employment. In response to the motion, Reed filed an affidavit averring that while at the Martori firm he never performed any services for Gore. He stated further that he "never saw any files, documents or other materials relating to [the Gore litigation]," nor does he have any "present recollection" of any matters that related to the '74 action.

Reed averred that he was aware of the possible conflict regarding Goldstein even before Reed's first meeting with IMPRA, that Goldstein has had no access to the pertinent files, and that the case has not been discussed in Goldstein's presence.

IMPRA seeks reversal of the disqualification order or, alternatively, seeks remand in view of the failure of the district court to make specific findings in ruling on the motion.

## OPINION

In an order dated July 12, 1984 in this appeal [3], this court stated that the appealability of an order disqualifying counsel would be resolved in accordance with the regional circuit law. We noted further that the Ninth Circuit permits the immediate review of the grant of a motion to disqualify counsel. *See Gough v. Perkowski,* 694 F.2d 1140 (9th Cir.1982). We also stated that this court would review the disqualification order in light of Ninth Circuit precedents.[4]

A district court order disqualifying counsel will not be disturbed, under Ninth Circuit precedent, if the record reveals "any sound basis" for the court's action. *Paul E. Iacono Structural Engineer, Inc. v. Humphrey,* 722 F.2d 435, 438 (9th Cir.), *cert. denied,* — U.S. —, 104 S.Ct. 162, 78 L.Ed.2d 148 (1983); *Gas-A-Tron of Arizona v. Union Oil Company of California,* 534 F.2d 1322, 1325 (9th Cir.), *cert. denied,* 429 U.S. 861, 97 S.Ct. 164, 50 L.Ed.2d 139 (1976); *cf. In re Coordinated Pretrial Proceedings in Petroleum Products Antitrust Litigation,* 658 F.2d 1355, 1361 (9th Cir.1981), *cert. denied,* 455 U.S. 990, 102 S.Ct. 1615, 71 L.Ed.2d 850 (1982) (an order of disqualification that is not based on "articulable principles" cannot be sustained). Thus, the district court's order will not be reversed unless, from the record as a whole, it can be said the court has misperceived (or misapplied) the rele-

**3.** *In re International Medical Prosthetics Research Associates, Inc.,* 739 F.2d 618 (Fed.Cir. 1984).

**4.** *See Panduit Corp. v. All States Plastic Mfg. Co.,* 744 F.2d 1564 (Fed.Cir.1984), for a more detailed analysis of the basis for the conclusion that the regional circuit law should be applied.

**1466**

vant rule of law or has abused its discretion.[5] *Iacono*, 722 F.2d at 438.

Ninth Circuit decisions on motions to disqualify begin with the inquiry whether the former representation is "substantially related" to the current representation. *Trone v. Smith*, 621 F.2d 994, 998 (9th Cir.1980). The Ninth Circuit has stated that "[s]ubstantiality is present if the factual contexts of the two representations are similar or related," and a substantial relation between the two cases will be presumed, "[i]f there is a *reasonable probability* that confidences were disclosed which could be used against the client in [a] later, adverse representation...." *Id.* (emphasis added). Because both the fact and the appearance of total professional commitment are endangered by adverse representation in related cases, "[i]t matters not whether confidences were in fact imparted to the lawyer by the client. The substantial relationship between the two representations is itself sufficient to disqualify." *Id.*, at 999.

The pleadings before the trial court from the prior suit show that both cases involved the development of expanded, porous polytetrafluoroethylene suitable for use in artificial arteries. Both cases involve the same adversaries, W.L. Gore & Associates, Inc. and IMPRA. In both cases IMPRA filed antitrust counterclaims which charge improper marketing practices in connection with the parties' goods. The record clearly supports a finding that the '74 and '84 actions are "substantially related", which establishes *prima facie* the case for disqualification against both Goldstein and Reed individually.

Appellant argues strongly that the district court's disqualification of the entire firm based upon Goldstein's prior involvement was improper because Goldstein has been effectively "screened" from the case.

Thus, appellant argues, the presumption that Goldstein shared relevant confidences with other members of the Reed, Goldstein firm, particularly Reed, stands rebutted.

In a recent decision of this court, *Panduit Corp. v. All States Plastic Manufacturing Co.*, 744 F.2d 1564 (Fed.Cir.1984), we had occasion to review the Seventh Circuit law of attorney disqualification. We observe that the Ninth Circuit applies essentially the same presumptions discussed in detail in *Panduit*, with perhaps some modification of terminology. In that case, we noted that under Seventh Circuit law, members of a firm may rebut the presumption that a tainted attorney has shared confidential information with them. One way to rebut the sharing presumption is to present evidence proving that the tainted attorney has been timely and effectively screened within the firm from any connection with the relevant representation.

■ IMPRA argues that the Ninth Circuit would similarly allow the presumption to be overcome. Thus, per IMPRA, the district court's disqualification of the entire firm was improper in view of the evidence assertedly showing that Goldstein has been screened. On the other hand, Gore argues that the Ninth Circuit has never approved screening and, in any event, the entire firm must, nevertheless, be disqualified on the basis of *Reed's* prior involvement. The truth of this latter proposition would enable us to properly resolve this appeal without exploring regions of the law not yet charted by the Ninth Circuit.[6] Although we have stated that "[w]here the regional circuit court has not spoken, we need to predict how that regional circuit would have decided the issue," *Panduit Corp.*, *supra*, slip op. at 1576, such a prediction would be improper unless essential to the

---

5. Petitioner's argument that the failure of the district court to set forth detailed findings constitutes reversible error *per se* is noted; however, we are not aware of any Ninth Circuit precedent which has adopted such a rule. Moreover, Fed.R.Civ.P. 52(a) suggests that findings need not accompany the decision on a motion to disqualify counsel, although we agree that the better practice is for the trial court to articulate its findings and conclusions.

6. The Ninth Circuit has expressly left open the question of whether firmwide disqualification would be necessary if screening procedures were used. *See Paul E. Iacono Structural Engineer, Inc., supra*, 722 F.2d at 442.

disposition of the appeal. In this case it is not necessary since the presumption that Reed received confidences through his prior association with the Martori firm has not, in our view, been clearly overcome.

IMPRA insists that Reed has effectively rebutted the presumption that he shared in Gore confidences at the Martori firm. In support of this position, IMPRA advances an uncontroverted affidavit wherein Reed averred that he (1) never performed any services in connection with the 1974 *Gore v. IMPRA* action; (2) never saw any files, documents or other related materials; and (3) has no present recollection of there ever being any matters in the office relating to that representation. This affidavit, IMPRA asserts, is sufficient to dissipate any taint as to Reed under principles applied by the Ninth Circuit in *Gas-A-Tron of Arizona v. Union Oil Company of California, supra,* 534 F.2d 1322 (9th Cir.1976).

IMPRA is correct that in *Gas-A-Tron* the Ninth Circuit did not disqualify a firm as a result of the hiring of an associate who was asserted to be tainted by confidences imputed to him while an employee of another firm. The Ninth Circuit made a pragmatic evaluation of the level of work of the associate and discounted the probability of his receiving confidences.[7] However, nothing in *Gas-A-Tron* requires us to alter the district court's disqualification order here. This case has none of the flavor of the *Gas-A-Tron* situation where a young associate moved between large firms and was asserted to "taint" his new firm which was engaged in representing its regular clients. Only the most rigid and unreasoned application of the canons of ethics would require a client to be deprived of the counsel of his choice in such circumstances.

█ In this case we cannot say that the court abused its discretion by disqualifying Reed and his firm. First, in the Martori

firm, Reed was a member of a small group of antitrust litigators, others of whom were actively representing Gore. Inadvertent disclosure to him of Gore confidences cannot be ruled out, despite the fact that he never actually worked on Gore matters or looked at files. His absence of present recollection does not rebut the presumption of shared confidences.

Further, Reed's statement is not the only consideration. Any ruling must take into account the nature of the role of the "tainted" attorney in the present litigation. Reed is to be lead counsel in these proceedings. He is not merely an associate who is charged with tainting others.

Finally, we are convinced that disqualification of the Reed, Goldstein firm will impose no serious hardship on IMPRA. IMPRA has been represented throughout this proceeding by the McCabe firm. This is not a case where disqualification will result in significant lost time and expense in bringing new counsel "up to speed." IMPRA was notified immediately of the potential conflict and the matter was swiftly pursued to a final disqualification judgment only a few weeks after the firm was hired.

Appellant was confronted by the heavy burden of proving the absence of "any sound basis" in the record to support the district court's conclusion. Considering the entirety of the record before the district court, we conclude that disqualification of Reed and his firm was necessary because of what clearly seems to us to be a strong appearance of professional impropriety. Both representations involved Gore suing IMPRA. Goldstein worked directly for Gore, and Reed was a member of a firm which represented Gore in the prior action. Now both attorneys are partners in the small firm that IMPRA seeks to use as its counsel. The technical subject matter of each suit is the same. The Martori firm

---

**7.** The court relied on precedent which adopted the "peripheral representation" standard mentioned in *Trone, supra,* 621 F.2d at 998 n. 3. This test appears to be comparable to establishing an effective rebuttal of the presumption of shared confidences as discussed in *Panduit, su-*

*pra,* under Seventh Circuit law. However, in *Panduit,* the attorney Conte—who was in the position of Reed—not only offered such proof, but also voluntarily withdrew, and was screened to prevent taint of the rest of the firm.

which Reed left is representing Gore in this litigation. Under these circumstances, Gore's motion clearly was a legitimate attempt to preclude a representation which threatened to adversely affect its interests and was not contrived for purposes of harassment.

When all factors were balanced, it could have reasonably been concluded that representation of IMPRA in this case by Reed and the Reed, Goldstein firm would adversely affect the public's perception of the integrity of the profession. Finding neither legal error nor abuse of discretion in this decision of the district court, we *affirm*.

AFFIRMED.