**ATASI CORPORATION,**
**Plaintiff–Appellant,**

v.

**SEAGATE TECHNOLOGY,**
**Defendant–Appellee.**

No. 88–1054.

United States Court of Appeals,
Federal Circuit.

May 26, 1988.

Ronald E. Mallen, Long & Levit, San Francisco, Cal., argued for plaintiff-appellant. With him on the brief was Richard E. Flamm.

Karl A. Limbach, Limbach, Limbach and Sutton, San Francisco, Cal., argued for defendant-appellee. With him on the brief was Michael E. Dergosits.

Before FRIEDMAN and NEWMAN, Circuit Judges, and BENNETT, Senior Circuit Judge.

BENNETT, Senior Circuit Judge.

This is an appeal from an unpublished order of the United States District Court for the Northern District of California, entered March 3, 1987. The district court granted a motion by Seagate Technology (Seagate) to disqualify the law firm of Skjerven, Morrill, MacPherson, Franklin & Friel (the Skjerven firm) from representing Atasi Corporation (Atasi). On June 5, 1987, the district court certified the order for review pursuant to 28 U.S.C. § 1292(b), (c) (1982). On October 8, 1987, we granted Atasi's petition for review. We affirm.

## Background

Atasi commenced the underlying action on November 20, 1984, accusing Seagate of infringing its U.S. Patent No. 4,414,594, of breach of contract, and of unfair competition. Atasi is represented by the Skjerven firm. Seagate was originally represented in its defense by the law firm of Flehr, Hohbach, Test, Albritton & Herbert (the Flehr firm). The Flehr firm later withdrew its representation and Seagate is now represented by the law firm of Limbach, Limbach & Sutton.[1] On March 8, 1985, the proceedings and discovery in the suit were stayed pending outcome of patent reissue proceedings. On November 17, 1986, Atasi

moved to lift the stay. On that same date Seagate moved to disqualify the Skjerven firm.

Seagate brought the motion on the ground of conflict of interest. Seagate charged that one of the Skjerven firm's "of counsel" attorneys, Nat Kallman, had previously represented Seagate in this litigation as an "of counsel" attorney to the Flehr firm. Seagate argued that the Skjerven firm should be disqualified as a result of Nat Kallman's "switching sides" in the same litigation. The district court granted the motion.

There is no dispute that Kallman was an of counsel attorney to the Flehr firm while it represented Seagate in this action. While of counsel to the Flehr firm, Kallman participated in the representation of Seagate. Kallman's signature appeared on a pleading, he assisted in the preparation of a brief, and he made two visits to a Seagate plant.

In response to the motion, Atasi first averred that Kallman was not participating with the Skjerven firm in the representation of Atasi. Second, Atasi averred that Kallman has been screened from the Atasi litigation. Last, Atasi argued that as an of counsel attorney he is not a member of the Skjerven firm for purposes of imputed disqualification. Atasi seeks reversal of the disqualification order.

## Issues on Appeal

Whether the district court erred in holding:

1. the confidential information known by an of counsel attorney, Kallman, was presumed to be shared with the other attorneys of the Skjerven firm;

2. the screening of Kallman was insufficient to erect a "Chinese Wall" to rebut the presumption; and

3. Seagate's delay in bringing the disqualification motion did not constitute waiver or consent.

---

1. The Flehr firm was required to withdraw as a result of one of the conditions of a settlement agreement in a separate action. The action was for patent infringement of the same patent in the Atasi–Seagate litigation.

## OPINION

### I. Choice of Law and Standard of Review

As a matter of policy the Federal Circuit reviews procedural matters that are not unique to patent matters under the law of the particular regional circuit court where appeals from the district court would normally lie. *Sun Studs, Inc. v. Applied Theory Associates,* 772 F.2d 1557, 1566, 227 USPQ 81, 87 (Fed.Cir.1985); *Panduit Corp. v. All States Plastic Manufacturing Co.,* 744 F.2d 1564, 1574–75, 223 USPQ 465, 471 (Fed.Cir.1984).[2] Accordingly, we shall decide the disqualification order of the instant appeal in light of Ninth Circuit law.

■ The district court has the primary responsibility for controlling the conduct of lawyers practicing before it. An order of the trial court exercising its discretion in fulfilling that responsibility will not be disturbed if the record reveals "any sound" basis for the disqualification. *Paul E. Iacono Structural Engineer, Inc. v. Humphrey,* 722 F.2d 435, 438 (9th Cir.), *cert. denied,* 464 U.S. 851 (1983); *Gas–A–Tron of Arizona v. Union Oil Co. of California,* 534 F.2d 1322, 1325 (9th Cir.), *cert. denied,* 429 U.S. 861, 97 S.Ct. 164, 50 L.Ed.2d 139 (1976). We will only reverse a disqualification order where the district court misperceives the relevant rule of law or abuses its discretion. *Iacono,* 722 F.2d at 438.

### II. The "of Counsel" Relationship and the Presumption of Shared Confidences

■ The test for disqualification under Ninth Circuit decisions is whether the former representation by the attorney changing sides is "substantially related" to the current representation. *E.g., Trone v. Smith,* 621 F.2d 994, 998 (9th Cir.1980). On this point Atasi argues Kallman was only minimally involved in the case while he was of counsel to the Flehr firm.

Therefore, Atasi argues, he did not receive any significant confidential information. However, the rule does not require that the lawyer changing firms should actually have received confidences in the former representation. *Id.* at 999. The disqualification rule is designed to preserve the confidences of the former client. To require an actual disclosure before disqualification would be improper, since it would require the very disclosure the rule is intended to protect against. *Id.* Thus the test does not depend on whether actual confidences were received or on the length of the former representation. The test only depends on whether the former and current representations are substantially related. This test is met, since here the former representation is the same action at law as the current representation.

The possible harshness of this rule is mitigated by the "peripheral representation" standard. *Trone,* 621 F.2d at 998 n. 3. Under this standard an attorney previously associated with a firm that handled matters substantially related to those in which the attorney's disqualification is sought may avoid disqualification by showing he had no personal involvement in the matters. *Id.* On the facts of the instant appeal the peripheral representation defense fails. As we have previously noted, Kallman's signature appeared on a pleading for Seagate, he helped prepare a brief, and he twice visited a Seagate facility. Kallman, therefore, was personally involved in the matter.

■ Once one of a law firm's members is found to have been counsel for an adverse party in a substantially related matter the entire firm must be disqualified. *Iacono,* 722 F.2d at 442; *Trone,* 621 F.2d at 999. The disqualification applies whether or not the other lawyers of the firm were actually exposed to the confidential information possessed by the attorney switching firms. *Trone,* 621 F.2d at 999. Thus, a presump-

---

**2.** In *Richardson–Merrell, Inc. v. Koller,* 472 U.S. 424, 432, 440–41, 105 S.Ct. 2757, 2762, 2766, 86 L.Ed.2d 340 (1985), the Supreme Court implicitly overruled *Panduit* on other grounds, i.e., by holding that orders disqualifying counsel in civil cases are not collateral orders subject to appeal as "final judgments" within the meaning of 28 U.S.C. § 1291 (1982). As previously stated, however, we take jurisdiction pursuant to the certification procedure of 28 U.S.C. § 1292(b), (c) (1982).

tion exists that the other members of the firm shared in the confidential information.[3]

The applicability of this presumption to the facts before us is the key issue in the instant appeal. That is, whether the presumption of shared confidences is raised where the attorney switching firms is of counsel rather than an associate or partner. To decide this issue we must identify the ethical regulations applicable to Kallman and the Skjerven firm in the instant appeal. Also, we must identify the policies underlying the Ninth Circuit decisions applying imputed disqualification and determine if those policies are furthered where an of counsel attorney is involved. Lastly, we must determine if any adverse consequences would result from excepting an of counsel attorney from the presumption.

■ Kallman and the Skjerven firm are governed in the instant appeal by both the California Rules of Professional Conduct and the local rules of the Northern District. Under Northern District Local Rule 110–3 lawyers are, in addition to the California rules, bound by "decisions of any court applicable" to "standards of professional conduct." *Iacono*, 722 F.2d at 440. The California rules do not provide for imputed disqualification but the ABA Model Code of Professional Responsibility does so provide. Disciplinary Rule 5–105(D) states that "[i]f a lawyer is required to decline employment or to withdraw from employment under a Disciplinary Rule, no partner, or associate, or any other lawyer affiliated with him or his firm, may accept or continue such employment." *Model Code of Professional Responsibility* Disciplinary Rule 5–105(D). The ABA Model Code as applied in court decisions is binding on the lawyers practicing before the Northern District.[4] *Iacono*, 722 F.2d at 439–40. Since the language of Rule 5–105(D) includes "any other lawyer associated with him" in addition to "partner or

associate," we construe this language to include of counsel attorneys.

In addition to the plain language of the disciplinary rules there are sound policies underlying the presumption of shared confidences. The most important policy is the preservation of secrets and confidences communicated to the lawyer by the former client. *Trone*, 621 F.2d at 998. The client has the right to expect that confidences disclosed to his lawyer will not be shared with others and will not be used against him by his former lawyer or by lawyers associated with his former lawyers. The presumption that a lawyer switching sides shares confidences with his associates is essential to protecting these confidences.

This policy of preserving the client's confidences would be hindered if of counsel attorneys were excepted from the presumption of shared confidences. To require a showing of actual shared confidences before applying imputed or vicarious disqualification would be inconsistent and would have the same undermining effect on the policy with an of counsel attorney as it would with associates and partners. That is, it would require the very disclosure the rule is intended to protect against. In conclusion, we construe the plain language of the disciplinary rule to include of counsel attorneys. The policy underlying the rule requires a presumption of shared confidences and excepting of counsel attorneys from the presumption would undermine this underlying policy. Therefore, we hold the presumption of shared confidences applies to Kallman and the Skjerven firm.

■ In holding that the district court properly exercised its discretion in disqualifying the Skjerven firm we must observe that Kallman was more than a *de minimus* of counsel, an independent contractor working part time for the firm. His contract with Skjerven was in evidence before

---

**3.** The issue of whether the presumption is rebuttable is reviewed in part III of this opinion.

**4.** The Model Code of Professional Responsibility was superseded by the ABA Model Rules of Professional Conduct in 1983. Rule 1.10 of the Model Rules covers imputed disqualification.

However, it is unnecessary to consider the applicability of Model Rule 1.10 since Model Code Rule 5–105(D) as applied in *Iacono* is still binding on lawyers practicing before the Northern District of California.

the district court and is before us. In brief, the contract establishes that Kallman had an active and very close relationship with the firm.

The of counsel contract between Kallman and the Skjerven firm provided in part that:

a full time secretary would be provided to Kallman if necessary and that an office would be provided to him;

billing would be done by the firm;

the firm's medical and dental insurance policies would cover Kallman, at his option;

his mail would be received through the firm's office;

he would do "all of his legal work through and in the name of the firm";

miscellaneous costs such as postage, telephone, copying, etc., would be billed to his clients by the firm;

backup help would be provided when he was overloaded with work;

legal work of the firm's clients would be sent to him;

Kallman's work would be billed for him by the firm at the rate of $160 per hour; and

the firm would reimburse Kallman for dues and fees paid for state bars and law associations.

### III. *"Chinese Wall"*

Since the presumption of shared confidences is applicable to the Skjerven firm, the disqualification of the firm must follow. That is, disqualification must follow unless the presumption is rebuttable and the elements of successful rebuttal are satisfied. Again, this court will review procedural matters that are not unique to patent issues under the law of the particular regional circuit court where appeals from the district court would normally lie. *Panduit Corp. v. All States Plastic Manufacturing Co.,* 744 F.2d 1564, 1574–75, 223 USPQ 465,

471 (Fed.Cir.1984). Thus, Ninth Circuit law is controlling in the instant appeal.

Circuits which allow rebuttal of the presumption require evidence of an effective screening of the tainted attorney from the rest of the firm in order for the presumption to be successfully rebutted. This is generally known as the Chinese Wall defense. As the district court in the present case noted, the Ninth Circuit has not yet found it necessary to rule on the availability of such a defense to imputed disqualification.[5] *See Paul E. Iacono Structural Engineer, Inc. v. Humphrey,* 722 F.2d 435, 442 (9th Cir.), *cert. denied,* 464 U.S. 851, 104 S.Ct. 162, 78 L.Ed.2d 148 (1983); *Trone v. Smith,* 621 F.2d 994, 999 n. 4 (9th Cir.1980). It would be improper for this court to predict how the Ninth Circuit would decide that issue unless such a prediction was essential to the disposition of the appeal. *W.L. Gore & Associates v. International Medical Prosthetics Research Associates,* 745 F.2d 1463, 1466–67, 223 USPQ 884, 887 (Fed.Cir.1984). In the instant appeal, as in our decision in *W.L. Gore,* such a prediction is not essential to the disposition of the appeal since the presumption of shared confidences has not been clearly overcome. That is, despite the alleged oral screening of Kallman by a Skjerven firm partner who instructed Kallman before he was hired to refrain from involvement in this litigation, the district court noted, "there is a complete lack of evidence before the court indicating that the *entire* Skjerven firm was also notified of this oral screening procedure *before* Kallman assumed his 'of counsel' position." [Emphasis in original.]

Atasi argues, alternatively, that timely implementation of the Chinese Wall is not the only way to rebut the presumption of shared confidences. Atasi contends the so-called "cone of silence" is sufficient to rebut the presumption.[6] Under this method

5. Two district courts in the Ninth Circuit have allowed the Chinese Wall defense to be raised. *See United States ex rel. Lord Elec. Co. v. Titan Pac. Constr. Corp.,* 637 F.Supp. 1556, 1564 (W.D. Wash.1986); *Haagen–Dazs Co. v. Perche Nol Gelato, Inc.,* 639 F.Supp. 282, 287 (N.D.Cal.1986).

6. *See Nemours Found. v. Gilbane, Aetna, Fed. Ins. Co.,* 632 F.Supp. 418, 428 (D.Del.1986) (reasoning self-imposed silence by the attorney switching firms is a more appropriate screening mechanism than the Chinese Wall since the members of the legal profession should be credited with a certain level of integrity).

screening is sufficient to rebut the presumption where the attorney switching firms, but not the other members of the firm, agrees not to share confidences of prior clients with his new associates. As with the Chinese Wall, however, the Ninth Circuit Court of Appeals has never approved the cone of silence.[7] Since the Ninth Circuit has yet to approve the Chinese Wall, which provides more assurance against shared confidences than the cone of silence, we do not now approve the latter method of rebuttal.

## IV. *Waiver*

■ Atasi argues Seagate waived its right to move for imputed disqualification. Atasi cites *Trust Corp. of Montana v. Piper Aircraft Corp.*, 701 F.2d 85, 87 (9th Cir.1983), for the proposition that a former client may waive his right to object to counsel of an opposing party on the ground of conflict of interest where he knowingly refrains from asserting it promptly. However the decision in *Trust* was based on facts substantially different from those in the instant appeal. In *Trust* the attorney switching firms contacted his former client to inform him of the possible conflict. The attorney also provided files to his former client to assist the former client in determining if he wished to object to the representation. The former client promised to contact the attorney if he objected to the representation but he waited two and one-half years before bringing an objection.

In contrast to the facts in *Trust*, the facts in the instant appeal do not indicate an intent by Seagate to waive its right to object to representation of Atasi by the Skjerven firm. Kallman did not contact Seagate to inform it of the possible conflict. Instead Karl Limbach[8] learned of the conflict from a telephone call to Kallman. Seagate did not promise to contact Kallman if Seagate objected to the representation and the motion to disqualify was brought about 6 months after Seagate learned of the conflict. During this 6 months the proceedings and discovery had been stayed and the motion was brought on the same day Atasi moved to lift the stay.

In addition to the facts, we must consider the policies involved. The doctrine of waiver exists as a means to balance the competing policies relevant to imputed disqualification. The policy of preserving the former client's confidences is opposed by the policy of giving the opposing party the freedom of choice of legal counsel. *See Model Rules of Professional Conduct* Official Comments to Rule 1.10. (1983).[9] The doctrine of waiver protects the opposing party's freedom of choice of legal counsel. However waiver should only apply where, on the facts present, the balance of the competing policies weighs in favor of the opposing party's freedom of choice of legal counsel. This occurs particularly when a motion to disqualify is used in an abusive manner as a part of litigation tactics. This occurred in *Trust*. Since the type of abuse present in *Trust* is not present in the instant appeal there is no waiver.

Atasi will undoubtedly suffer in time and expense as a result of the disqualification of the Skjerven firm. This is particularly unfortunate since it is the attorney's actions, not Atasi's, which resulted in the disqualification. It was Kallman and the Skjerven firm, not Atasi, who knew of the possible conflict.[10] On the former client's

---

7. In *United States ex rel. Lord Elec. Co. v. Titan Pac. Constr. Corp.*, 637 F.Supp. 1556 (W.D.Wash. 1986), the District Court for the Western District of Washington held against imputed disqualification. The *Titan* court reasoned the Chinese Wall was merely one method of rebutting the presumption of shared confidences. *Id.* at 1565. However, the district court below in the instant appeal disagreed with the *Titan* court's reasoning on the ground it did not accurately reflect the trend of district court decisions in the Ninth Circuit.

8. A partner in the firm of Limbach, Limbach, & Sutton, Seagate's counsel after the Flehr firm withdrew.

9. The Model Rules have not been adopted by California or the Northern District of California but Rule 1.10 relating to imputed disqualification and the official comments thereto are instructive in the instant appeal.

10. As part of a settlement agreement in a prior action (*Atasi v. Priam*) the Flehr firm was prohibited from representing Seagate in the instant

side it was Limbach, not Seagate, who first learned of the conflict of interest.

Though Atasi will undoubtedly suffer as a result of the imputed disqualification of the Skjerven firm, that alone is insufficient to prevent the disqualification. Again, there are competing policies affecting the disqualification rule and a balancing is necessary to determine which policy should have priority. Whenever a result is reached by choosing one policy over another the party in favor of the subordinated policy usually suffers. In the instant appeal the policy of preserving the former client's confidences is entitled to priority over the policy of freedom of choice of counsel.

case. Thus Atasi deprived Seagate from free-

## CONCLUSION

Appellant had the burden of showing an absence of "any sound" basis in the record to support the district court's order. Finding neither legal error nor abuse of discretion in the order of the district court, we affirm.

AFFIRMED.