**MERLE NORMAN COSMETICS, INC., et al., Petitioners,**

v.

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA, Respondent.**

**James L. Kemper, Real Party in Interest.**

**No. 88–7109.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted July 11, 1988.

Decided Sept. 2, 1988.

---

Michael J. Kump, Kinsella, Boesch, Fujikawa & Towle, Los Angeles, Cal., for petitioners.

Joel R. Bennett, Fulwider, Patton, Rieber, Lee & Utecht, and Fred Lorig, Los Angeles, Cal., for the real party in interest.

Before NELSON, REINHARDT and O'SCANNLAIN, Circuit Judges.

REINHARDT, Circuit Judge:

This case arises on a petition for a writ of mandamus. Petitioners, the defendants in the underlying litigation, challenge the district court's denial of their motion to disqualify attorney Joel Bennett from representing plaintiff James Kemper. Petitioners seek disqualification primarily because of Bennett's alleged connection with John Scholl, who previously represented petitioner Merle Norman Cosmetics while a partner in a law firm with Elwood Kendrick and George Netter. Scholl was the attorney chiefly responsible for the Merle

Norman account, and when he left the Kendrick firm in 1975, he took the account with him. However, petitioners also allege that while Merle Norman was still a client of the firm, Kendrick and Netter, individually, did some work on its account. We assume that to be the case for purposes of this proceeding.

Bennett joined the Kendrick firm after Scholl and Merle Norman departed. In the late 1970's and early 1980's, the firm underwent several changes in name and partnership. In January 1986, Bennett and the firm, in its final form, filed an antitrust complaint against petitioners on behalf of Retail Cosmetic Concepts, Inc. Petitioners sought to disqualify them from representing Retail Cosmetic. The issue became moot, temporarily, when Retail Cosmetic replaced Bennett and the firm with other counsel, and subsequently the firm dissolved.

■ Bennett is now a partner at Fulwider, Patton, Rieber, Lee & Utecht. In October 1987, he joined in the representation of Kemper in his complaint against petitioners, which is virtually identical to the complaint previously filed by him and the Kendrick firm on behalf of Retail Cosmetic. According to petitioners, although Bennett did not officially represent Kemper when the action was filed, he was the principal author of the Kemper complaint. The Kemper and Retail Cosmetic actions are now consolidated. Petitioners assert that because of his association with the Kendrick firm, Bennett is disqualified from representing Merle Norman's opponents in the present action.[1]

■ In determining whether mandamus relief is appropriate, we follow the guidelines set out in *Bauman v. United States District Court*, 557 F.2d 650 (9th Cir.1977), and explained further in *In re Cement Antitrust Litigation*, 688 F.2d 1297 (9th Cir.1982), *aff'd for lack of quorum sub nom. Arizona v. United States Dist. Court*, 459 U.S. 1191, 103 S.Ct. 1173, 75 L.Ed.2d 425 (1983). A highly significant, although not always dispositive, criterion is whether the district court's order denying petitioners' motion to disqualify Bennett is clearly erroneous as a matter of law. We find that, here, it is not.

"The relevant test for disqualification is whether the former representation is 'substantially related' to the current representation.... Substantiality is present if the factual contexts of the two representations are similar or related." *Trone v. Smith*, 621 F.2d 994, 998 (9th Cir.1980). The two representations involved here do not meet this standard. Scholl worked principally on trademark matters for Merle Norman; to the extent that Kendrick and Netter worked on the Merle Norman account, they too were involved primarily in trademark matters. By contrast, the action with respect to which a writ of mandamus is sought involves Merle Norman's use of an allegedly anticompetitive distribution system. Kemper's and Retail Cosmetic's complaints assert that Merle Norman's exclusive dealership arrangement, under which Merle Norman products are sold through "studios," is anticompetitive because it prevents the studio owners from selling competing products; that the imposition of this exclusive dealership agreement without notice to the studio owners is a breach of the owners' contracts; and that Merle Norman is using sham litigation, specifically a trade secret appropriation lawsuit, for purposes of intimidation. The factual context of the trademark matters handled by the Kendrick firm is neither similar nor related to that of the present claims.

There is no evidence that Scholl, Kendrick, or Netter had any in-depth knowledge or confidential information about Merle Norman's distribution system. Petitioners assert that Scholl had access to Merle Norman confidences, citing corre-

---

1. The fact that Bennett is no longer with the Kendrick firm should not, we think, affect our analysis. Bennett drafted Retail Cosmetic's complaint while he was still at the firm. Although he now represents Kemper as a partner at another firm, the Kemper action has been consolidated with the Retail Cosmetic action. We will therefore treat the case as if Bennett were representing Merle Norman's opponents while still associated with the Kendrick firm. Bennett's attorney agreed at oral argument that this is the proper approach.

spondence between the Kendrick firm and Merle Norman. That correspondence shows only that Scholl, and possibly Kendrick and Netter, knew that Merle Norman distributed its products through studios rather than department stores. Such general knowledge is readily available to the public, including all of Merle Norman's customers, and would not be of particular value in the present action. The correspondence does not indicate any confidential knowledge on the part of any member of the Kendrick firm that is factually related to the issues raised by Kemper's and Retail Cosmetic's antitrust complaints. Nor does the nature of the trademark problems make it likely that any such knowledge would have been transmitted.

*Trone* provides for a presumption of a substantial relationship "[i]f there is a reasonable probability that confidences were disclosed which could be used against the client in later, adverse representation." *Trone*, 621 F.2d at 998. Because there is no evidence that Scholl or the members of the Kendrick firm had any confidential information about Merle Norman's distribution system, and no reason to believe that the trademark work would have required them to obtain such information, there is no reasonable probability that confidences were disclosed which could be used against Merle Norman. Therefore, the presumption of a substantial relationship does not arise. As a result, we need not look to the declarations filed by the individuals involved, which would be relevant to rebut a presumption of a substantial relationship. *See id.* at 998 n. 3.

The district court found no ground on which to disqualify Bennett in his current representation of Kemper. Because, on the record before us, we find no substantial relationship between that representation and the prior work on Merle Norman trademark matters, the district court's order is not clearly erroneous.[2]

■ Only two of the five *Bauman* and *Cement Antitrust* guidelines for granting mandamus relief are satisfied. The first

guideline, which requires that we consider whether the petitioner has other relief available, is satisfied because an order denying a motion to disqualify counsel is not subject to appeal under 28 U.S.C. § 1291 or § 1292. *See Richardson–Merrell, Inc. v. Koller,* 472 U.S. 424, 440, 105 S.Ct. 2757, 2766, 86 L.Ed.2d 340 (1985); *Shurance v. Planning Control Int'l, Inc.,* 839 F.2d 1347, 1348 (9th Cir.1988). The second guideline requires us to determine whether the petitioner will suffer damage or prejudice that is not correctable on appeal. In assessing this factor, we must assume that damage would be caused by the district court's order, and we look only to whether the damage alleged is of a type that is correctable on appeal. *See, e.g., Cement Antitrust,* 688 F.2d at 1302. In this case, if petitioners' claims were wellfounded, the damage would be irremediable. *See Unified Sewerage Agency v. Jelco Inc.,* 646 F.2d 1339, 1344 (9th Cir.1981). Thus, this factor is also present.

The other three guidelines are not satisfied. The third guideline is not met because the district court's order is not clearly erroneous. The fourth factor is whether the district court's order is an oft-repeated error or manifests persistent disregard of the federal rules. *See Cement Antitrust,* 688 F.2d at 1303–04. When applying this guideline, we assume the district court acted erroneously and determine whether the error is of a type that is often repeated. In this case, it is not. Finally, the fifth guideline requires us to determine whether the petitioner raises new and important issues. *See id.* at 1304. The substantial relationship issue is not a novel one in this circuit, *see Trone,* 621 F.2d at 998; *Gas-A-Tron of Arizona v. Union Oil Co.,* 534 F.2d 1322 (9th Cir.), *cert. denied,* 429 U.S. 861, 97 S.Ct. 164, 50 L.Ed.2d 139 (1976), and while the subject is an important one, the particular aspects presented by the proceeding before us are of no special significance.

Our cases do not make clear the proper disposition of a petition for mandamus where some of the five factors are present

---

**2.** Because we find no substantial relationship between the two representations, we need not

decide whether knowledge should be imputed from Scholl, Kendrick, or Netter to Bennett.

and some are not. *Cf. Bauman*, 557 F.2d at 661 (noting that there was no need to "measure and balance" because all five guidelines suggested the same conclusion). We see no reason to set forth here a general analysis of the proper method of balancing the five factors. Even though the results of our analysis of this case are mixed and the guidelines point in different directions, "no close analysis is required." *Id.* In light of the facts that the issue raised here is neither new nor important, and the error is not of a type that is often repeated, the fact that the district court's decision is not clearly erroneous is sufficient to preclude the granting of mandamus relief.

The petition for writ of mandamus is DENIED.