Horace **RICHARD**, Jr.

v.

**SOUTHERN PACIFIC TRANSP. CO.**

Civ. A. No. 89–2631.

United States District Court,
E.D. Louisiana.

April 19, 1990.

Joe M. Inabnett, Jones & Granger, New Orleans, La., for plaintiff.

J. Warren Gardner, Jr. and Charles W. Schmidt, III, Christovich & Kearney, New Orleans, La., for defendant.

## MEMORANDUM AND ORDER

SEAR, District Judge.

This motion to disqualify plaintiff's counsel arises out of the occupational hearing loss suit filed by plaintiff Horace Richard, Jr. against defendant Southern Pacific Transportation Company (Southern Pacific). Southern Pacific moved to disqualify plaintiff's counsel, Steve Carrigan, and his law firm, Kirk & Carrigan, pursuant to Model Rules of Professional Conduct 1.9 and 1.10(a) when it learned that Kirk & Carrigan represented Southern Pacific in thirty-eight Federal Employer Liability Act cases, twelve of which were occupational hearing loss cases.

Plaintiff opposes the motion for disqualification based on the exception provided in Rule 1.10(c). He contends that Steve Carrigan never personally represented Southern Pacific, and the Kirk & Carrigan firm member who represented Southern Pacific, Mainess Gibson, is no longer associated with or a member of the Kirk & Carrigan firm. Additionally, the only associate who worked with Gibson on Southern Pacific matters has also left the firm.

On October 5, 1989, a Texas state court judge held an evidentiary hearing on the identical disqualification issue in a similar hearing loss proceeding. The evidence introduced at that hearing demonstrates that Mainess Gibson worked with Kirk & Carrigan for less than one year. During that time, he worked on approximately twelve hearing loss cases. The one Kirk & Carri-

gan associate who worked on those cases with Gibson left the firm with him. The transcript of the state court proceedings also indicates that only four attorneys currently associated with Kirk & Carrigan worked with the firm when Gibson represented Southern Pacific. Of those four, only Dana Kirk ever worked on a Southern Pacific file—he billed three and one half hours when he prepared an answer to a complaint while Gibson was out of the office. No other current Kirk & Carrigan member has ever worked on a Southern Pacific file.

■■■ The only recent Fifth Circuit case involving the former client disqualifications rule is *Johnston v. Harris County Flood Control District,* 869 F.2d 1565 (5th Cir. 1989), *cert. denied,* — U.S. ——, 110 S.Ct. 718, 107 L.Ed.2d 738 (1990). In that case, the court set forth the applicable standard in deciding a motion to disqualify counsel: a court should scrutinize the precise nature of the relationship between the present and the former representations rather than apply a mechanical rule of disqualification. *Id.* at 1569. Generally, a party seeking to disqualify opposing counsel on the grounds of former representation must establish an actual attorney-client relationship, and a substantial relationship between the subject matter of the former and present representations. *Id.* (citing *In re Corrugated Container Antitrust Litigation,* 659 F.2d 1341, 1345 (5th Cir. Unit A 1981)).

The Louisiana legislature adopted the Model Rules of Professional Conduct on December 19, 1986. They became effective January 1, 1987 and replaced the former Model Code of Professional Conduct. The relevant rules provide:

**Rule 1.9. Conflict of interest: Former client**

A lawyer who has formerly represented a client in a matter shall not thereafter;

(a) Represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation; or

(b) Use information relating to the representation to the disadvantage of the

former client except as Rule 1.6 would permit with respect to a client or when the information has become generally known.

### Rule 1.10. Imputed disqualifications: General Rule

(a) While lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rules 1.7, 1.8(c), 1.9, or 2.2.

. . . .

(c) When a lawyer has terminated an association with a firm, the firm is not prohibited from thereafter representing a person with interests materially adverse to those of a client represented by the formerly associated lawyer unless:

(1) The matter is the same or substantially related to that in which the formerly associated lawyer represented the client; *and*

(2) Any lawyer remaining in the firm has information protected by Rules 1.6 and 1.9(b) that is material to the matter.

La.Rev.Stat. art. 16 (West 1988).[1]

■ This case falls within the exception provided in Rule 1.10(c) because Gibson, the attorney who represented Southern Pacific, is no longer a member of or associated with the Kirk & Carrigan firm. Therefore, in order to prohibit Steve Carrigan and Kirk & Carrigan from representing this plaintiff, the matter must be the same or substantially related to the prior representation[2] *and* a lawyer presently associated with Kirk & Carrigan must have information protected by Rules 1.6 and 1.9(b). The transcript of the Texas evidentiary hearing, which plaintiff attached to his opposition as Exhibit 1, convinces me that no lawyer currently affiliated with Kirk &

Carrigan has any information protected by Rules 1.6 and 1.9(b).

Even without Model Rule 1.10(c), neither Steve Carrigan nor his firm would be disqualified under the former and more strict rule of imputed disqualification.[3] The Fifth Circuit addressed the firm disqualification issue in *In re Corrugated Container Antitrust Litigation,* 659 F.2d 1341 (5th Cir.1981). In *Corrugated Container,* the court disqualified the Chadwell law firm because of its extensive and long-standing relationship with the opposing client, and its involvement in substantially similar cases. The court stated:

> Container takes pains to point out that the main Chadwell lawyers responsible for this advice left the firm in 1970 and 1973. This makes no difference since knowledge is imputed to partners of the lawyer disqualified, even if the partnership is later dissolved. . . .
>
> . . . .
>
> . . . While this presumption of imputed knowledge may be unduly harsh in some circumstances, it is not here. Kraft is Chadwell's oldest client. The fees generated by work for Kraft indicate that it is a substantial client. Though the attorneys who worked most closely with Kraft during the period in question have now left the Chadwell Firm, imputing their knowledge to those partners remaining in the firm presumes only that which makes lawyers associate themselves in a shared practice of their profession. Among partners and regarding a long-time substantial client, this single-imputation rule cannot be rebutted.

*Id.* at 1345–47 (citations omitted). The Fifth Circuit decided *Corrugated Container* long before the Louisiana Legislature adopted the Model Rules of Professional Conduct.

No one contests that of the four attorneys present when Gibson worked with

---

**1.** Rule 1.6, which is cited in both Rules 1.9 and 1.10, provides that "[a] lawyer shall not reveal information relating to representation of a client unless the client consents after consultation. . . ."

**2.** Neither party disputes the similarity between this case and the hearing loss cases handled by Gibson while associated with Kirk & Carrigan.

**3.** Imputed disqualification is premised on the theory that client confidences are shared among the attorney's partners and employees associated with the attorney at the time of representation. *See, e.g., American Can Co. v. Citrus Feed Co.,* 436 F.2d 1125, 1129 (5th Cir.1971).

Kirk & Carrigan, only one performed any work on a Southern Pacific file, and the work was insubstantial. Thus, if Steve Carrigan is to be disqualified, the disqualification must be based on the imputed disqualification provided by Rule 1.10(a). Southern Pacific came to the Kirk & Carrigan firm with Mainess Gibson in January of 1987, and it left with him in December of 1987. Gibson's relationship with Kirk & Carrigan was temporary in nature and on a trial basis. He and one associate performed all of Southern Pacific's work. Additionally, as Gibson stated in the Texas state court hearing, Southern Pacific's policy was to hire an attorney, not a law firm. Southern Pacific was not a substantial client of Kirk & Carrigan's as was Kraft for Chadwell in *Corrugated Container.* Based on the facts in this case, plaintiff's counsel sufficiently rebutted the presumption underlying the imputed disqualification rule.[4]

Accordingly,

IT IS ORDERED that defendant's motion to disqualify plaintiff's counsel and his law firm is DENIED.

---

**4.** *See also Brennan's Inc. v. Brennan's Restaurants, Inc.,* 590 F.2d 168, 171 (5th Cir.1979) (appellate court refused to disqualify an attorney who never had an attorney-client relationship with plaintiff, and whom the district court disqualified by imputation).