**ELAN TRANSDERMAL LIMITED**

v.

**CYGNUS THERAPEUTIC SYSTEMS, a California corporation.**

**No. C–91–1413 WHO.**

United States District Court, N.D. California.

Nov. 17, 1992.

Morgan Chu, Wayne M. Barsky, Irell & Manella, Los Angeles, CA, for plaintiff.

Lynn H. Pasahow, Beth H. Parker, Louisa M. Daniels, Celeste E. Andersen, McCutchen, Doyle, Brown & Enersen, San Francisco, CA, for defendant.

## OPINION AND ORDER

ORRICK, District Judge.

Not honesty alone, but the punctilio of an honor the most sensitive, is then the standard of behavior. As to this there has developed a tradition that is unbending and inveterate. Uncompromising rigidity has been the attitude of courts of equity when petitioned to undermine the rule of undivided loyalty by the 'disintegrating erosion' of particular exceptions. [cite omitted] Only thus has the level of conduct for fiduciaries been kept at a level higher than that trodden by the crowd. It will not consciously be lowered by any judgment of this court.

*Meinhard v. Salmon*, 249 N.Y. 458, 464, 164 N.E. 545, 546 (1928).

The standard of behavior for fiduciaries, articulated by Justice Cardozo (then Chief Judge), is the standard for the fiduciary relationship that exists between lawyer and client, and is the standard this Court upholds in granting plaintiff's motion to disqualify defendant's counsel.

### I.

Elan Transdermal Limited ("Elan"), an Irish corporation, initiated this suit against rival Cygnus Therapeutic Systems ("Cygnus"), a California corporation, alleging infringement of its patent (United States patent No. 4,946,853 ("'853 patent")) for a patch that delivers nicotine transdermally. When Elan replaced its original counsel with the Los Angeles firm of Irell & Manella ("Irell"), the firm that had provided Cygnus with intellectual property advice for

over four years during the development of Cygnus' nicotine patch, Cygnus brought this motion for disqualification of Irell. This motion has raised serious issues about the duties attorneys owe their former clients and the lingering aftereffects of the law firm merger boom, which the Court has considered carefully.

The relevant facts are not in dispute.

Elan received the '853 patent on August 7, 1990. On May 10, 1991, when Elan filed its complaint, both Elan and Cygnus had nicotine patches before the Food and Drug Administration ("FDA") for testing and eventual clearance for marketing. Elan claimed that the product for which Cygnus was seeking FDA clearance is within the scope of the '853 patent, and that Cygnus has already infringed its patent rights.

Irell (and its predecessor firm, Ciotti & Murashige, Irell & Manella)[1] was intellectual property counsel to Cygnus from March 1, 1987, to August 31, 1991. Thomas Ciotti was the partner in charge of work for Cygnus, and both he and most of the other attorneys who worked on the Cygnus representation were based in the Menlo Park office of Irell. In September 1991, the Menlo Park office of Irell "de-merged," and almost all the personnel, including Ciotti, affiliated themselves with the firm of Morrison & Foerster. Cygnus has since used that firm to handle its patent work.

As intellectual property counsel to Cygnus, Irell provided a range of services, including advice regarding patents and patent applications around the world that might affect Cygnus' business, determinations regarding the patentability of Cygnus' inventions, advice about protection of Cygnus' patentable inventions, and prosecution of Cygnus patents nationally and internationally. During its representation by Irell, Cygnus was developing its nicotine transdermal patch as its first commercial product. An Irell attorney represented Cygnus in several patent applications related to the patch. During this time, Irell attorneys had free access both to Cygnus personnel and to its business and scientific records.

Irell's work for Cygnus included matters specifically related to this lawsuit. Irell lawyers provided written advice to Cygnus regarding previously asserted Elan patent claims, claims that are similar to those before the Court in this action,[2] oral and written advice regarding the '853 patent, the very patent-in-suit, and advice concerning a public offering prospectus, part of which Elan now alleges proves Cygnus' knowledge of its infringement.

Cygnus submitted, *in camera*, parts of an opinion letter Ciotti wrote to Cygnus in the summer of 1990 regarding the '853 patent. Cygnus' chairman and chief technical officer, Gary Cleary, declares that Cygnus gave its corporate securities counsel Irell's advice, as expressed in that opinion letter and also in a November 1990 conversation with Ciotti, and that securities counsel relied exclusively upon that advice when drafting the portion of the public offering prospectus regarding the '853 patent, the same portion Elan is now asserting is proof of Cygnus' liability.

According to Cygnus, which is relying on the billings it received, twenty-nine different Irell partners and employees worked on projects for Cygnus between March 1, 1987, and August 31, 1991. Cygnus has identified four of these people as current Irell lawyers—Messrs. Cost, Rothman, Smith and Winslow. Irell admits that one other current partner, Mr. Dull, also did Cygnus-related work, according to its internal time records.[3]

1. The Menlo Park law firm of Ciotti & Murashige had represented Cygnus in intellectual property matters. That firm merged with Irell & Manella on March 1, 1987, and the new office in Menlo Park initially called itself Ciotti & Murashige, Irell & Manella. In the 1990 edition of the *Martindale–Hubbell Law Directory* (122d ed.), the Menlo Park office is called simply Irell & Manella.

2. The previous claims of patent infringement involved Cygnus' patent application in Europe.

3. Dull charged one-half hour to Cygnus for investigating another conflict between Cygnus and a prospective client.

Smith and Winslow were co-chairs of the firm ethics committee during the relevant time period, and charged time to Cygnus in November 1990 that they spent deciding whether the firm could undertake representation of Elan regarding the '853 patent. Smith and Winslow met with Mr. Chu, the partner whom Elan had asked to represent it in the matter, and called Ciotti to discuss the conflict. The committee decided the firm could not accept the work for Elan and, further, that it had to stop doing work for Cygnus related to Elan and the '853 patent. Nonetheless, the committee decided the firm could continue to represent both Elan and Cygnus in matters not pertaining to the '853 patent. There is no indication that Irell provided Cygnus with advice regarding Elan after December 1990.[4]

Cost and Rothman are corporate securities lawyers who reviewed an opinion letter written by Ciotti to underwriters of Cygnus' public offering, and the public offering prospectus itself. Cost reviewed the letter as a member of the firm opinion committee. Rothman was a corporate associate practicing in the Menlo Park office. Cost charged three-quarters of an hour and Rothman one and one-half hours. The letter, written after the ethics committee meeting, specifically disavows any opinion of Elan's patents.[5] The prospectus, as discussed above, mentions Elan's patents.

Irell also offers information regarding four other current firm lawyers who, although they did not charge time to Cygnus, were mentioned in the time sheets of attorneys who were charging time to Cygnus as discussing Cygnus-related matters.[6] All these people, and all attorneys mentioned above, deny having any confidential information substantially related to the current representation.

Although the bulk of the Menlo Park lawyers stayed in Menlo Park after the merger ended and affiliated with Morrison & Foerster, several current Irell partners worked at the Menlo Park office. Dull was listed in the *Martindale–Hubbell Law Directory ("Martindale–Hubbell")* as a partner in the Menlo Park office in 1989, 1990, and 1991. He does not offer exact dates of his time in Menlo Park in his declaration. Rothman is listed as an associate in Menlo Park in the 1991 edition of *Martindale–Hubbell*, and describes his time there as a "brief period." Chu, a current partner, who is on the opposition papers and argued on behalf of Elan before the Court, was listed in the 1989 and 1990 editions of *Martindale–Hubbell* as a "resident member" in the Menlo Park office. Although Irell submitted copies of the directory listings of the Menlo Park office for the years 1985–1991 in order to document the history of that office, Chu informed the Court at oral argument that these listings were mistaken and that, in fact, he was never based in Menlo Park office and visited there only for short periods when he was in Northern California for firm business.

While recognizing the possibility of other errors in the directory listings, the Court notes that according to *Martindale–Hubbell*, the Menlo Park office, during the period of its merger with Irell, remained a small office, with eight partners and four associates listed in the 1988 edition, and eight partners and thirteen associates listed in the 1991 edition.

## II.

In deciding whether one's law firm may represent a client in a matter adverse to a

---

**4.** Gary Cleary declares that he recalls a conversation with Ciotti in November, or "possibly early December" 1990, regarding the '853 patent.

**5.** While Irell repeatedly claims to have turned over all files from the Menlo Park office, including all Cygnus files, to the group going to Morrison & Foerster, it was able to produce both this letter and a copy of the public offering prospectus. As Cygnus points out, the letter, while not privileged, was confidential. Irell now claims that these documents are the only documents it

still has that could in any way be construed as part of a Cygnus record or file. It does not explain how it happened to retain these two documents.

**6.** These are Ms. Deffense, who had a phone conversation regarding the rules governing exports, Ms. Webb, a paralegal who discussed a possible corporate name change, Mr. Chu, who, as mentioned above, attended a meeting of the ethics committee, and Mr. Frischling, an associate who also attended the meeting.

former client, one must have in a mind, first and foremost, the fiduciary nature of the attorney-client relationship; second, the possibility of a substantial relationship between the representation of the current client and the representation of the former client; and, third, the irrebuttable presumption that the knowledge of the lawyers who represented the former client is imputed to the other lawyers in the firm. The Court examines these precepts *seriatim*.

## A.

In the Northern District of California, the conduct of counsel is governed by "the standards of professional conduct required of members of the State Bar of California and contained in the State Bar Act, the Rules of Professional Conduct of the State Bar of California, and decisions of any court applicable thereto." Local Rule 110–3.

Under Local Rule 110–3, this Court is bound by California case law on the professional responsibility of California lawyers. California courts have long recognized the fiduciary nature of the attorney-client relationship. " 'Few precepts are more firmly entrenched than that the fiduciary relationship between attorney and client is of the very highest character....' " *People v. Thoi*, 213 Cal.App.3d 689, 699, 261 Cal.Rptr. 789, 795 (1989) (quoting *Yorn v. Superior Court*, 90 Cal. App.3d 669, 675, 153 Cal.Rptr. 295, 297–98). In order to maintain the high character of that relationship,

> an attorney is forbidden to do *either* of two things after severing his relationship with a former client. He may not do anything which will injuriously affect his former client in any manner in which he formerly represented him, nor may he at any time use against his former client knowledge or information acquired by virtue of the previous relationship.

*People ex rel. Deukmejian v. Brown*, 29 Cal.3d 150, 155, 172 Cal.Rptr. 478, 480, 624 P.2d 1206, 1208 (1981) (quoting *Wutchumna Water Co. v. Bailey*, 216 Cal. 564, 573–74, 15 P.2d 505, 509 (1932)). *Deukmejian's*

two-prong test forbids any action that injures the fruits of prior representation *and* any use of any confidential information. Cygnus argues that Irell's representation of Elan violates both of these prohibitions.

The State Bar rules also limit the representation of former clients according to Rule 3–310 of the Rules of Professional Conduct of the State Bar of California, which states in relevant part as follows:

> (A) If a member *has or had* a relationship with another party interested in the representation, ... the member shall not accept or continue such representation without all affected *clients'* informed written consent.
>
> (B) A member shall not *concurrently* represent clients whose interests conflict, except with their informed written consent.
>
> . . . .
>
> (D) A member shall not accept employment adverse to a client or *former client* where, by reason of the representation of the client or former client, the member has obtained confidential information material to the employment except with the informed written consent of the client or *former client.*[7]

(Emphasis added.) Cygnus is alleging a breach of Rule 3–310(D), claiming that Irell accepted employment adverse to the interests of a former client where it had obtained confidential information material to the subsequent representation.

Irell defends against these charges by arguing that despite *Deukmejian's* two-prong test, Rule 3–310 separates a "duty of loyalty" or "duty of nonadversity" that it says it owes only *current* clients under Rule 3–310(A) and (B), from a "duty of confidentiality" that it owes *all* clients, under Rule 3–310(D). It then offers declarations from its current attorneys who charged time to Cygnus, or were mentioned in other lawyer's records related to Cygnus, disavowing any knowledge of the matters at issue in this litigation. Irell, therefore, concludes that no duty of confidentiality to its former client is threatened

---

7. "Member" means a member of the State Bar of California. Rule 1–100(B)(2).

**1388**

by its current representation. It also argues that both Rule 3–310 and California case law do not apply to a *firm* that has formerly represented a party that it is now litigating against on behalf of another client, but only to individual lawyers.

While Irell is correct that both Rule 3–310 and the prohibitions restated in *Deukmejian* focus on the misuse of actual knowledge and on individual attorneys, this Court's inquiry does not end here. In fleshing out the obligations of the fiduciary duty owed by attorneys to their former clients, California courts have also considered the propriety of requiring that parties seeking to disqualify opposing counsel prove actual knowledge and the relationship between a "tainted" attorney and a firm.

### B.

■ The courts of California have recognized the dangers of the swearing matches that would result if they required proof of *actual* knowledge of material confidential information, "tear[ing] aside the protective cloak drawn about the lawyer-client relationship." *T.C. Theatre Corp. v. Warner Bros. Pictures,* 113 F.Supp. 265, 269 (S.D.N.Y.1953). A former client would be forced to disclose confidential information in order to prove what the law firm knows best—what its attorneys actually know. *Rosenfeld Const. Co. v. Superior Court,* 235 Cal.App.3d 566, 574, 286 Cal.Rptr. 609, 613 (1983). Therefore, the courts have developed the "substantial relationship" test,[8] under which " 'actual possession of confidential information is not required for an order of disqualification' where there is a 'substantial relationship' between the current and former representations." *Civil Service Comm'n v. Superior Court,* 163 Cal.App.3d 70, 80, 209 Cal.Rptr. 159, 166 (1984); *see also H.F. Ahmanson & Co. v. Salomon Bros.,* 229 Cal.App.3d 1445, 1452, 280 Cal.Rptr. 614, 617 (1991). "This is the rule by necessity, for it is not within the power of the former client to prove what is

in the mind of the attorney." *Global Van Lines, Inc. v. Superior Court,* 144 Cal. App.3d 483, 489, 192 Cal.Rptr. 609, 613 (1983).

It is clear that Irell's work as Cygnus' intellectual property counsel while Cygnus prepared for and made the patent application that allegedly infringes the '853 patent is substantially related to its current representation of Elan. Irell concedes, for purposes of this motion only, that work done by its *former* attorneys was substantially related to the present matter. It asks the Court not to apply the substantial relationship test to the firm, but instead to judge the actual lack of knowledge of the remaining attorneys and to find that the firm is not in violation of any ethical obligations.

There are two difficulties with Irell's position. First, two of its *current* attorneys, Cost and Rothman, admittedly reviewed the prospectus and the November 1990 opinion letter for Cygnus, so the Court cannot assume that no current attorneys did work substantially related to the present matter. Second, under California law, the knowledge of Irell's *former* attorneys is imputed to those attorneys who were also working at Irell during the period of its representation of Cygnus, most of whom are still at Irell. As discussed in section C, the second difficulty is insurmountable.

■ The fact that Cost and Rothman billed only a short period of time does not preclude their work from being substantially related to the present litigation. *See Novo Terapeutisk Laboratorium A/S v. Baxter Travenol Laboratories,* 607 F.2d 186 (7th Cir.1979) (2.25 hours of work sufficient to disqualify former counsel). A substantial relationship is shown "if the factual contexts of the two representations are similar or related." *Trone v. Smith,* 621 F.2d 994, 998 (9th Cir.1980). Cost and Rothman were reviewing an opinion letter to be sent to underwriters in connection with a public offering by Cygnus, a company whose chief new product at the time

**8.** This test has also been adopted by federal courts. *Trone v. Smith,* 621 F.2d 994, 998 (9th Cir.1980).

was the transdermal patch. Cost read preliminary and final copies of the prospectus, the underwriting agreement, and Ciotti's opinion letter. The prospectus contained a sentence about the '853 patent, describing it as a patent that, if valid, would prevent Cygnus from marketing its patch without a license from Elan. As discussed above, Cygnus' securities counsel wrote this sentence in reliance on Irell advice.

The opinion letter regarding the prospectus, however, specifically denies any opinion regarding any Elan patent. Irell argues that this disclaimer suffices to remove any similarity or relationship between the "factual context" of that work and its current representation of Elan. Further, Cost and Rothman were working as corporate securities counsel, and did not review either the letter or the prospectus for their intellectual property advice. Given that the underlying litigation in this matter hinges on patent infringement rather than securities fraud, and given the disclaimer in the letter, the Court cannot conclude that Cost and Rothman are sufficiently tainted by work in a similar factual context to disqualify them and, hence, the firm.

■■■ This Court must presume a substantial relationship, however, even if the facts are not substantially related, "[i]f there is a reasonable probability that confidences were disclosed which could be used against the client in later, adverse representation." *Id.* This presumption may be rebutted. *Merle Norman Cosmetics, Inc. v. United States District Court*, 856 F.2d 98, 101 (9th Cir.1988). While there is a reasonable probability that confidences were disclosed to Cost and Rothman, the presumption of a substantial relationship is rebutted by declarations by Cost and Rothman that they received no confidential in-

formation regarding Cygnus' patent as rebuttal evidence.[9]

There is still, however, a substantial relationship between the work that Irell did, through its former attorneys, for Cygnus, and its current representation of Elan. Under California law governing the fiduciary relationship between attorney and client, this Court's finding of a substantial relationship creates an irrebuttable presumption that those former attorneys had confidential information from Cygnus material to the case at hand. *River West, Inc. v. Nickel*, 188 Cal.App.3d 1297, 1304, 234 Cal. Rptr. 33, 37 (1987) ("when the substantial relationship of the matters is established, the inquiry ends").[10] The remaining question for the Court is the effect of the fact that former Irell attorneys worked on a substantially related matter on the propriety and legality of their former co-workers' current representation.

### C.

■■■ California courts have adopted a rule that "knowledge obtained by one member of a firm of lawyers is imputed to all the other members." *Rosenfeld Constr.*, 235 Cal.App.3d at 573, 286 Cal.Rptr. at 612. The *Rosenfeld* court faced a situation in which disqualification of a firm that had previously represented Rosenfeld in a related matter was urged after the attorney representing Rosenfeld's adversary joined that firm. The "untainted" attorney who had brought Rosenfeld's adversary as a client to the "tainted" firm claimed ignorance of the prior representation, and the rest of the firm claimed to know little and remember less about its past representation of Rosenfeld. *Id.* at 571–72, 286 Cal. Rptr. at 611–12. The trial court determined that "no present counsel at the law firm in question had 'sufficient knowledge

---

9. While, for the reasons just stated, the Court does not rely solely on Cost and Rothman's work as the basis for its decision, their review of a key document in the current litigation, helping Cygnus prepare for a public offering that Elan is now using against Cygnus, is a factor in the ultimate decision of this Court.

10. River West recognized a "narrow exception" to the "strict, prophylactic rule" of disqualifica-

tion in the case of representation adverse to that of a former client if the former client has delayed unreasonably in making a motion to disqualify, and causes prejudice to the current client. 188 Cal.App.3d at 1308, 234 Cal.Rptr. at 41. There is no question of unreasonable delay in this case. Cygnus moved promptly to protest when Elan substituted Irell as counsel.

of [the prior representation]' to disqualify the firm." *Id.* at 576, 286 Cal.Rptr. at 615. The California Court of Appeal reversed, finding "no authority that supports the notion that, standing alone, the present recollection of the members of the firm is an adequate criterion," and remanded for application of the substantial relationship test. *Id.* Irell can offer this Court no more than the present recollection of its members that they saw nothing, heard nothing and, in fact, know nothing of what transpired during the four and one-half years in which twenty-nine of its employees billed time to Cygnus. Thus, under California law, the materially relevant knowledge possessed by Ciotti and others is imputed to those who shared their office in Menlo Park and their affiliation with Irell. Irell asks the Court to look beyond this precept of California law to find that because all of the counsel it concedes are tainted have left, the actual knowledge of the remainder, proved by their declarations, should preclude dismissal. Irell wants the Court to consider the presumption of shared confidences a rebuttable presumption, although the *Rosenfeld* court called it a "conclusive presumption." *Id.* at 577, 286 Cal.Rptr. at 615.[11]

The Court recognizes the business realities of the situation in which a partner leaves a firm with affiliated partners and associates, taking a client with them. Those remaining behind do not wish to be restrained by conflicts of those who left. Irell stresses the geographic isolation of the Menlo Park office and its lack of integration into the firm as reasons why the presumption should be rebuttable in a case of an unanticipated "de-merger." The Court, however, also recognizes that the merger, while ultimately unsuccessful, was not brief. During those four and one-half years, Irell billed Cygnus $850,000 for legal services. Those attorneys most actively engaged on Cygnus projects shared a small office with other attorneys still with the firm. Chu, now the partner in charge of the representation of Elan, was in and out of the Menlo Park office. The presumption of shared confidences is based on the common-sense notion that people who work in close quarters talk with each other, and sometimes about their work. It is also only common sense that when there is no hard evidence of the subjects of years of office conversation, and firm conversation, and there is a significant amount of business to be gained by not remembering that anything relative to a particular former client's representation was discussed, there are strong incentives to claim no actual knowledge.

■ The Court does not suggest that any Irell attorney has misrepresented his or her knowledge to the Court. These concerns are, nevertheless, germane to this discussion for two reasons. First, because the underpinnings of the California presumption of shared confidences are firmly grounded in common sense, a federal court should not lightly discard them at the request of a firm seeking to avoid unpleasant consequences of a failed expansion scheme. Second, to allow this presumption to be rebutted by declarations by self-interested parties, the rebuttal evidence that would inevitably be put forward in every case of this sort, would raise a strong sense of impropriety. The State Bar Rules and California law are designed not only to protect against disclosure of client confidences, but to preserve the "public trust in the scrupulous administration of justice and the integrity of the bar." *In re Complex Asbestos Litigation,* 232 Cal.App.3d 572, 586, 283 Cal.Rptr. 732, 740 (1991). Neither of these reasons behind the presumption of shared confidences is any less strong in this case, even though the core of the attorneys involved have left the firm. There was still ample opportunity for shared confidences

---

11. There are two conclusive presumptions in this area of California law, both discussed in *Rosenfeld.* As discussed in section B, the presumption that if there is a substantial relationship between the current and former representation, confidential information related to the current representation "has passed to the prior attorney" is conclusive. 235 Cal.App.3d at 577, 286 Cal.Rptr. at 615. Following the "imputed knowledge theory" (*id.* at 573, 286 Cal.Rptr. at 612), the presumption that the prior attorney's firm possesses confidential information is also "conclusive." *Id.* at 577, 286 Cal.Rptr. at 615.

with attorneys who remained after the merger collapsed, and there is still an appearance of impropriety in the representation of a new client attacking the very work a firm did for a previous client.

To bolster its argument for treating a firm in its position differently, Irell asks the Court to turn from California law to the ABA Model Rules of Professional Conduct and federal law to judge its conduct.

The Model Rules deal more explicitly with the present situation than do the California rules. Model Rule 1.10(c) permits the remaining lawyers in a firm to represent interests adverse to those of clients of a former lawyer unless any remaining lawyer has actual knowledge:

> (c) When a lawyer has terminated an association with a firm, the firm is not prohibited from thereafter representing a person with interests materially adverse to those of a client represented by the formerly associated lawyer unless:
>
> > (1) the matter is the same or substantially related to that in which the formerly associated lawyer represented the client; and
> >
> > (2) any lawyer remaining in the firm has [confidential information] that is material to the matter.

Thus, under the Model Rules, a swearing contest is important, for a firm is only disqualified if its former lawyers performed substantially related work (as-sumed in this motion) *and* the remaining lawyers have actual knowledge.

■ Nevertheless, while the Model Rules have been applied by federal courts in other districts and other circuits, as cited by Irell,[12] they have not been adopted by the California State Bar.[13] In the Ninth Circuit, "the canons and disciplinary rules of the Model Code [and presumably of its successor, the Model Rules] are merely hortatory, not proscriptive." *Paul E. Iacono Structural Eng'r, Inc. v. Humphrey*, 722 F.2d 435, 438 (9th Cir.1983), *cert. denied*, 464 U.S. 851, 104 S.Ct. 162, 78 L.Ed.2d 148 (1985). Irell also urges the Court to consider the "leading case" on disqualification of remaining lawyers after tainted lawyers' departure.[14] In *Novo*, a partner left a firm, taking a client, Baxter, with him. The former firm, Hume, took a new client, who then sued Baxter. Baxter then sought to disqualify the Hume firm, alleging that the former representation of Baxter by the Hume firm was substantially related to the current litigation. The decision of the Seventh Circuit hinged on the degree to which the knowledge gained by the former partner when he was representing Baxter as part of the Hume firm could be imputed to the remaining members of Hume after he left. This is parallel to the issue in this case in which the question is the effect on Irell after Ciotti left. The court began with the presumption that members of a firm share client confidences. 607 F.2d at 196. It then considered wheth-

---

**12.** *Atasi Corp. v. Seagate Technology*, 847 F.2d 826 (Fed.Cir.1988); *Richard v. Southern Pacific Transp. Co.*, 735 F.Supp. 206 (E.D.La.1990); *Nissan Motor Corp. v. Orozco*, 595 So.2d 240 (Fla. App.1992); *First Small Business Inv. Co. v. Intercapital Corp. of Oregon*, 108 Wash.2d 324, 738 P.2d 263 (1987).

**13.** Prior to January 1, 1975, the State Bar Rules specifically referred to the ABA Model Code, but this reference was dropped and never included again, even after the Model Code was succeeded by the Model Rules. *Paul E. Iacono Structural Eng'r, Inc.*, 722 F.2d 435, 439 n. 5 (9th Cir.1983), *cert. denied*, 464 U.S. 851, 104 S.Ct. 162, 78 L.Ed.2d 148 (1985). Nevertheless, "[d]espite the deletion ..., the California courts continue to rely on the Model Code in addressing issues not covered precisely by the [State Bar Rules]." *Id.* at 439–40 n. 6. *See, e.g., Ojeda v. Sharp Cabrillo*

*Hosp.*, 10 Cal.Rptr.2d 230, 234–36, 8 Cal.App. 4th 1, 7–9 (1992) (citing Model Rules, and ABA Formal Opinion interpreting those rules).

**14.** Irell & Manella also offers a copy of the Restatement of the Law Governing Lawyers (Tent. Draft No. 4, 1991) § 204, which states that restrictions on a lawyer affiliated with a "personally prohibited" lawyer (such as Ciotti) do not apply when:

> (1) The affiliation between the lawyer and the personally-prohibited lawyer that created the imputed prohibition has been terminated and no confidential information of the client, material to the matter, has been communicated to the lawyer or any other lawyer who remains affiliated with the lawyer[.]

Because this tentative draft has no authority in this Court, the Court did not consider it in any way when reaching its decision.

er that presumption should be rebuttable. The court found that based on the particular facts in the case, including affidavits from "all of the remaining members of the Hume firm" that they lacked any knowledge of the substantially related matter in which the former partner had represented Baxter while with Hume, *id.* at 196 n. 4, the presumption had been rebutted. *Id.* at 197.

Irell points out that the Ninth Circuit remanded a case with instructions to the district court to consider a motion to disqualify counsel in light of both *Trone* and *Novo. Bank of America Nat'l Trust & Sav. Ass'n v. Summerland County Water Dist.,* 767 F.2d 544, 549 (9th Cir.1985). Irell fails, however, to discuss *Trone.* The Ninth Circuit in *Trone* limited *Novo* to its facts. 621 F.2d 994, 1001 n. 5 ("On those facts, we might agree, although the question is not before us."). *Trone* applied the substantial relationship test as discussed above. Irell does not offer, as the Hume firm did, declarations from all remaining members, but only from those who charged time on the Cygnus case. With a firm the size of Irell, proving that *all* members are untainted becomes nearly impossible. This is not a reason, however, to assume that client confidences were not divulged to remaining lawyers. The Court has no information about the knowledge that other current Irell attorneys may have learned from those who have since left in casual conversation, firm retreats, etc. In *Trone* itself, in which the tainted attorney was still at the firm, the court stated that "the firm as a whole is disqualified whether or not its other members were actually exposed to the information." *Id.* at 999.

While one district court in this Circuit has found the presumption of shared information to be rebuttable, *United States v. Titan Pacific Construction Corp.,* 637 F.Supp. 1556, 1564 (W.D.Wash.1986), this Court does not consider that to be the law of the Ninth Circuit or of California, especially in light of *Paul E. Iacono.* 722 F.2d at 442 (reiterating that an entire firm must be disqualified "when one of its members was counsel for an adverse party in a substantially related matter."). Because the Model Rule's invitation to a swearing match between a client and its former lawyers is contrary to state law, which under Local Rule 110–3 binds this Court, the Court declines to accept the invitation to judge such a match between Cygnus and Irell. Irell's lengthy representation of Cygnus in a substantially related matter is grounds for its disqualification because of the irrebuttable presumption, grounded in common sense and the need to protect the fiduciary nature of the attorney-client relationship, that its current attorneys have confidential information relevant to its current representation of Elan.

### III.

▉ Even if the presumption of shared knowledge were rebuttable when the "tainted" attorneys had left a firm, it has not been rebutted in this case. The Court has only Irell's unavoidably self-serving declarations as rebuttal evidence. Against this, the Court must weigh several other facts. Ciotti, and other departed lawyers, had material, confidential information substantially related to the current representation. They worked as sole intellectual property counsel for Cygnus for four years. Dull and Rothman were based in Menlo Park at least some of the time, while Chu, lead counsel for Elan, visited occasionally. The degree to which any of these men may have had conversations about the Cygnus account with Ciotti while working in a small office can never really be resolved by a swearing match. As mentioned above, the Court has no evidence about the degree of information sharing between the tainted attorneys and other Irell attorneys whose declarations are not given. Cost and Rothman each admittedly worked on a project at least tangentially related to the current representation. Additionally, Irell has been able to produce two documents related to the current matter even after all files were supposedly transferred to Morrison & Foerster. There are just too many loose ends to rebut the presumption that current Irell attorneys have confidential information material to the current dispute between Elan and Cygnus. The Court, reading the stack of decla-

rations from Irell attorneys, all proclaiming their ignorance of Cygnus-related matters, is reminded of the words of Hamlet's mother: "The lady doth protest too much, methinks." *William Shakespeare, Hamlet,* act 3, sc. 2.

Additionally, those declarations are insufficient to rebut the presumption of shared confidences because in the Ninth Circuit, as in the state courts, confidentiality is not the only ethical issue involved in prior representation.

> The rule [that it matters not whether confidences were in fact imparted to the lawyer] is necessary to implement the following canons of professional ethics: Canon 1 (maintaining integrity and confidence in the legal profession); Canon 4 (preserving confidences and secrets of a client); Canon 5 (exercise of independent professional judgment); Canon 6 (representing a client competently); Canon 7 (representing a client zealously within the bounds of the law); Canon 9 (avoiding even the appearance of professional impropriety).

*Trone,* 621 F.2d at 999; *see also Employers Ins. of Wausau v. Albert D. Seeno Const. Co.,* 692 F.Supp. 1150, 1163 (N.D.Cal.1988). The fiduciary relationship between attorney and client, a relationship of the "highest character," cannot be lightly undone by protests, no matter how numerous or how sincere. In this case, there is not sufficient evidence to rebut the presumption of shared confidences while maintaining the standards of professional responsibility established by the legal profession for its self-governance.

The Court will not undermine the attorney-client relationship by turning an indifferent eye to a firm representing the adversaries of former clients. The time-honored rules designed to protect clients and the honor of the legal profession are no less meaningful in a time of mergers and "demergers." Because Irell previously represented Cygnus for four years on a substantially related matter, because its remaining lawyers are presumed to share the client confidences revealed in that representation, and because Irell seeks by this representa-

tion of Elan to attack the very fruits of its work as intellectual property counsel to Cygnus, the Court holds Irell to the level of conduct suitable to a fiduciary and

IT IS HEREBY ORDERED that Elan's motion to disqualify the law firm of Irell & Manella is GRANTED.