ASYST TECHNOLOGIES, INC., Plaintiff,

v.

EMPAK, INC. et al., Defendants.

No. C96–03915 SBA (BZ).

United States District Court,
N.D. California.

April 18, 1997.

## ORDER DISQUALIFYING DEFENSE COUNSEL

ZIMMERMAN, United States Magistrate Judge.

May a law firm represent a party challenging the validity of a patent when two of its partners prosecuted the patent for a different client? I conclude it may not and grant plaintiff's motion to disqualify Wilson, Sonsini, Goodrich & Rosati from representing three of the defendants in this action.[1]

Between 1984 and 1988, attorneys Stephen C. Durant and Mark A. Haynes, then employed by the law firm of Fliesler, Dubb, Meyer & Lovejoy, represented plaintiff Asyst Technologies, Inc., in prosecuting and obtaining several patents, including the '166 and '421 patents. Thereafter, Durant and Haynes became partners in the law firm of Wilson, Sonsini, Goodrich & Rosatti. On October 28, 1996, Asyst, represented by the law firm of Cooley Godward, filed this complaint alleging that defendants Empak, Inc., Emtrak, Inc., Jenoptik, A.G., and Jenoptik Infab, Inc., infringed the '166 and '421 patents. On December 13, 1996, three of the defendants, represented by the New York firm of McAulay Fisher Nissen Goldberg & Kiel and by Wilson Sonsini filed an answer and counterclaims that, in part, challenge the validity of the patents which Durant and Haynes helped Asyst obtain.

1. Defendant Empak, Inc., separately represented by the firm of Flehr, Hohback, Test, Albritton & Herbert, takes no position on the motion to disqualify Wilson Sonsini.

Aware of the role of Durant and Haynes, counsel for Asyst asked Wilson Sonsini to recuse itself. That firm refused, though it did circulate a memorandum instructing its lawyers not to communicate with Durant and Haynes about the litigation. On January 30, 1997, Asyst moved to disqualify Wilson Sonsini from representing defendants.[2]

Because of the fiduciary nature of the attorney-client relationship, courts have been loathe to permit an attorney to act adversely to the interests of a former client. *Elan Transdermal, Ltd. v. Cygnus Therapeutic Systems*, 809 F.Supp. 1383, 1387 (N.D.Cal. 1992). Under Local Rule 11–3(a), every attorney practicing in the Northern District of California must comply with "the standards of professional conduct required of members of the State Bar of California." Rule 3–310(E) of the Rules of Professional Conduct of the State Bar of California states that "a member shall not, without the informed written consent of the client or former client, accept employment adverse to a client or former client where, by reason of the representation of the client or former client, the member has obtained confidential information material to the employment."

■ A client who objects to its former counsel acting adversely to it need not prove actual misuse of confidential information. Requiring such proof would by itself require the disclosure of confidential information. *Atasi Corp. v. Seagate Technology*, 847 F.2d 826, 829 (Fed.Cir.1988). Instead, most courts apply the "substantial relationship" test. Under that test, counsel will be disqualified from acting adversely to a former client if there is a "substantial relationship" between the current and former representa-tions. See cases collected in *Elan, supra,* at 1388. Once a substantial relationship is found, an irrebuttable presumption arises that the former attorney had confidential information material to the current representation and "the inquiry ends." *River West, Inc. v. Nickel,* 188 Cal.App.3d 1297, 1304, 234 Cal.Rptr. 33 (1987). If the attorney is currently a member of a law firm, her knowledge is imputed to all members of the firm and the entire firm is disqualified. *Atasi, supra,* at 830; *Elan, supra,* at 1389; *Rosenfeld Constr. Co. v. Superior Court,* 235 Cal. App.3d 566, 573, 286 Cal.Rptr. 609 (1991).[3]

■ I find that there is a substantial relationship between the work Durant and Haynes performed between 1984 to 1988 in prosecuting and obtaining the patents at issue and the work undertaken by their firm, Wilson Sonsini, in challenging the validity of those same patents on behalf of different clients.[4] Few people are more likely to have confidential information with which to attack the validity of a patent than the lawyers who prosecuted it. All courts of which I am aware and which have applied California and Ninth Circuit law have disqualified a law firm that has challenged the validity of a patent one of the firm's lawyers prosecuted for a former client. *Sun Studs, Inc. v. Applied Theory Associates, Inc.,* 772 F.2d 1557 (Fed. Cir.1985) (applying Ninth Circuit law); *Elan, supra; Hilleby v. FMC Corp.,* 1992 WL 455436 (N.D.Cal.1992). This result is especially compelling here where several of the affirmative defenses and counterclaims allege improper conduct by Asyst in prosecuting its patents. *See, e.g.,* Fifth Affirmative Defense: "The patents in suit are unenforceable by reasons of Asyst's inequitable conduct before the PTO."

2. The motion was referred to me for resolution under F.R. Civ. P. 72(a) and Local Rule 72–2.

3. Subsequent to the filing of this disqualification motion, Durant left Wilson Sonsini for another law firm. Citing no authority, Wilson asserts that his departure "renders moot" plaintiff's motion as to Durant. I fail to see how a tainted firm is cleansed by the departure of one of the attorneys who created the taint. The fact remains that Wilson Sonsini filed the Answer and Counterclaims during the time when, pursuant to the substantial relationship test, it possessed confidential information brought to it by Durant.

4. While Asyst does not show what confidential information Haynes and Durant actually possessed, it does not have to. *Elan, supra,* at 1388. Given that Durant and/or Haynes worked on the patent prosecution for about four years and transmitted numerous documents to the Patent Office, it is inconceivable that they did not have a confidential attorney client relationship with Asyst. *See Advanced Cardiovascular Systems v. C.R. Bard,* 144 F.R.D. 372 (N.D.Cal.1992)

None of the arguments raised by Wilson Sonsini to avoid the application of these settled rules is persuasive. Wilson suggests that I follow *Panduit Corp. v. All States Plastic Mfg. Co.* 744 F.2d 1564 (Fed.Cir.1984) which declined to disqualify the firm that was challenging the validity of certain of Panduit's patents because one of its attorneys had previously worked for a firm that had handled Panduit's foreign patent work. I decline to follow *Panduit* for a number of reasons. First, *Panduit* applied the law of the Seventh Circuit which "considers the right of a party to select counsel of his choice to be a matter of significant importance which will not be disturbed unless a specifically identifiable impropriety [presumably an actual breach of confidence] has occurred." *Panduit*, at 1576. This is contrary to the law of the Ninth Circuit or of California which does not require a "specifically identifiable impropriety." Nor do I consider the concern about depriving a litigant of counsel of choice to be as significant as the Seventh Circuit appears to consider it. There is no showing by Wilson Sonsini that its current clients made an informed choice to retain a firm two of whose partners had once represented its opponent in prosecuting the patents at issue. And surely the rules of ethics are not intended to encourage litigants to choose firms that may possess confidential information belonging to their adversaries. Finally, the attorney in *Panduit* who had transferred firms had done nothing for the first firm that had any bearing on, let alone substantial relationship to, the patents that were at issue. He certainly had not prosecuted those patents.

Next, Wilson Sonsini contends that because "there is absolutely *nothing* confidential about the contents of a patent's file history once the patent issues" (Memorandum, p. 6, emphasis in original), Durant and Hayes could not possess any confidential information subject to abuse. While it appears that there is some authority for the proposition that materials generated during the patent

prosecution are not protected by the attorney-client privilege, the weight of more recent authority, certainly in this district, is to the contrary. Especially interesting is *Conner Peripherals, Inc. v. Western Digital Corporation*, 1993 WL 726815 (N.D.Cal.1993), which upheld a refusal by Wilson Sonsini to produce documents relating to a patent prosecution on the grounds of attorney-client privilege. *See also Advanced Cardiovascular Systems v. C.R. Bard*, 144 F.R.D. 372 (N.D.Cal.1992).

Wilson Sonsini strongly contends that the knowledge of Durant and Haynes should not be imputed to DiBoise and Shariati, the Wilson lawyers defending this action. DiBoise and Shariati have declared that they have not discussed this case with Durant and Haynes, and that *after* Asyst raised the ethical issue, a memorandum circulated instructing Wilson lawyers not to discuss this matter with Durant and Haynes. Conspicuously absent are declarations from Haynes or Durant. In any event, it is precisely to avoid a "swearing match" that the substantial relationship test was developed. And whatever the efficacy and legal import of an ethical screen, *See Atasi, supra,* at 831, nothing was in place here until after this motion was filed.[5]

Finally, I cannot ignore the appearance of impropriety that would cloak this case if Wilson Sonsini continues to represent the defendants.[6] Patent litigation often has significant public ramifications. The litigants, the court, and the public would have to wonder whether Haynes' loyalty lies with his former client, Asyst, who may well need his help in defending its patents, or to the clients of his current firm.

IT IS HEREBY ORDERED that the law firm of Wilson, Sonsini, Goodrich & Rosati and all attorneys affiliated with the firm are:

1. DISQUALIFIED from serving as counsel of record or otherwise representing defendants in this action or in any matters related to this action; and

---

5. Assuming the Ninth Circuit were to recognize the use of ethical screens, I question whether the simple circulation of a memorandum as was done here could be an effective screen.

6. Given that Haynes may have information relevant to the dispute between the parties, it may well be that Wilson Sonsini's duty to its current clients will require it to interview or possibly depose Haynes. The purported ethical screen would seem to undercut that duty.

2. PROHIBITED from communicating or forwarding any of their work product created in the course of this action to defendants or to counsel subsequently retained by defendants to represent them in this action or in any matters related to this action.