# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

LUCILLE ABBOTT; ANN SEXTON;
LUCILLE ABBOTT SEXTON; ANN
SEXTON PETERSON,
        *Petitioners-Appellants,*

v.

UNITED STATES INTERNAL REVENUE
SERVICE,
        *Respondent-Appellee.*

No. 03-71908

Tax Ct. No.
19418-98

---

ANN SEXTON PETERSON, Executor,
ESTATE OF LUCILLE ABBOTT SEXTON,
Deceased,
        *Petitioner-Appellant,*

v.

COMMISSIONER OF INTERNAL
REVENUE,
        *Respondent-Appellee.*

No. 03-71919

Tax Ct. No.
3076-992

OPINION

Appeal from a Decision of the Tax Court

Argued and Submitted
February 11, 2005—Pasadena, California

Filed March 1, 2005

Before: John T. Noonan, David R. Thompson, and
Michael Daly Hawkins, Circuit Judges.

Opinion by Judge Noonan

2379

## COUNSEL

Robert P. Sticht, Los Angeles, California, for the petitioners-appellants.

Francesca U. Tamami, United States Justice Department, Washington, D.C., for the respondent-appellee.

## OPINION

NOONAN, Circuit Judge:

The taxpayer, Ann Sexton Peterson, executor of the estate of Lucille Abbott Sexton, appeals the Tax Court's denial of her motion to vacate its decisions of January 23, 2001. These decisions were based on stipulations by the parties. The lawyer for the taxpayer was employed as a consultant by the Internal Revenue Service during the period he represented the estate. Alleging a breach of legal ethics such that the estate had not been properly represented in the settlement, Peterson sought to set the decisions aside. The Tax Court held that there was "no credible evidence" that the lawyer failed to properly represent the estate. We affirm the judgment of the Tax Court.

### FACTS

Lucille Abbott Sexton died June 21, 1994. Peterson, her daughter, timely filed a return as her executor showing liability for estate tax of $68,894. An audit of the return led the IRS on October 1, 1997 to increase the estate tax to $415,868 and to assess gift tax. The deficiencies were based on (1) the IRS's view that $930,350 from decedent to her daughter, son-in-law, and their real estate partnership were taxable gifts; and (2) the disallowance of a claimed $200,000 deduction for an unsecured note to the partnership. The estate petitioned the Tax Court in opposition. In December 1999, the IRS Appeals officer offered a settlement reducing the gross estate by 25 percent. Peterson declined the offer. Preparation went on for trial scheduled for October 2000. The trial judge initiated a call to counsel for both parties and indicated a sense of the

unlikelihood of Peterson prevailing. Counsel so informed Peterson and recommended settlement as had been proposed in December 1999. She agreed. Counsel contacted counsel for the IRS, who said that the settlement was open if accepted by 5:00 p.m. of that day. Peterson accepted. Stipulations reflecting the settlement were signed on October 5, 2000 and filed on January 23, 2001.

Counsel for Peterson during these proceedings, beginning on October 25, 1996, was Dennis Harkavy. Harkavy was a graduate of Wharton School and of Brooklyn Law School, class of 1954. He was a member of the California and New York bars and also a certified public accountant. He was listed as a real estate attorney in *Best Lawyers in America*. He had been in practice since 1958.

In August 1998, the IRS Appeals Office in Los Angeles was looking for a real estate expert in the McGuire Partners case. Lorene Sams, an appraisal program coordinator, undertook to find the expert. She, in turn, asked the Los Angeles County Bar Association for suggestions. The association provided her six to ten names, among them Harkavy's. Tom Adams, in the same office as Sams, sent out a request for a bid to each lawyer on the list. Harkavy submitted a bid of $16,250 to review the documents relating to the air rights acquired by McGuire Partners in a building. He also offered for $2,000 to spend up to 8 hours at a conference between IRS personnel and representatives of the McGuire Partners, and for $5,000 "to provide any appropriate pre-trial preparation and trial testimony in U.S. Tax Court." He further offered to do research on "the threshold question" of whether air rights were solely allocable to land and therefore not depreciable. Harkavy disclosed that he represented taxpayers but did not disclose the name of any clients. Sams was unaware of his connection with the Sexton Estate case or of the case itself. She selected Harkavy on the basis of price, his experience, and his "potential to be an expert witness." Harkavy worked on this matter from October 9, 1998 until July 1999. In the

course of it, he attended two conferences between the Appeals Office and representatives of the McGuires. His services were not needed for trial.

## PROCEEDINGS

In April 2001, Peterson obtained new counsel and moved to vacate the Tax Court decisions on the ground that she had discovered Harkavy's work for the IRS and that Harkavy therefore had had a conflict of interest preventing proper representation of the estate. The Tax Court held a hearing and reviewed evidence; it then denied the motion to vacate. The Tax Court found "no credible evidence" that Harkavy failed to properly represent the estate or that his employment by the IRS had "any effect" upon his representation of the estate.

Peterson appeals.

## ANALYSIS

[1] *Conflict of interest*. Peterson argues that Harkavy violated the American Bar Association's Model Rules of Professional Conduct 1.7, which provides in relevant part:

> (a) A lawyer shall not represent a client if the representation of that client will be directly adverse to another client, unless:
>
>> (1) the lawyer reasonably believes the representation will not adversely affect the relationship with the other client; and
>>
>> (2) each client consents after consultation.
>
> (b) A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or

to a third person, or by the lawyer's own interests, unless:

(1) the lawyer reasonably believes the representation will not be adversely affected; and

(2) the client consents after consultation.[1]

**[2]** Rule 1.7(a) has no application here. Representation of the IRS in the McGuire Partners case was not "directly adverse" to the representation of the estate. The cases were entirely unrelated. Rule 1.7(b) also has no application. No evidence was produced by Peterson that representation of the estate was "materially limited" by Harkavy's responsibilities to the IRS or to his own interests. Harvaky's selection by the IRS was in no way related to his representation of the estate. No showing was made that Harkavy's loyalty to the estate was diluted by his services to the IRS. Peterson asks us to adopt an interpretation of the Rule that would mean that any time a lawyer represents a private client confronting a government agency, the lawyer could do no work of any kind for that agency, although his work for the agency and selection by the agency had no connection whatsoever with the work for the private client. We decline to adopt such reading of the Rule.

**[3]** In its Reply Brief, the estate cited California State Bar Rules of Professional Conduct, Rule 3-310(C). It provides:

A member shall not, without the informed written consent of each client: (1) Accept representation of more than one client in a matter in which the inter-

---

[1] ABA Model Rule 1.7 has been amended since the events of this case occurred. However, the 1995 version of the rule should apply, because it was in effect at all relevant times. *See Iacono v. Humphrey*, 722 F.2d 435, 438 (9th Cir. 1983).

ests of the clients potentially conflict; or (2) Accept or continue representation of more than one client in a matter in which the interests of the clients actually conflict; or (3) Represent a client in a matter and at the same time in a separate matter accept as a client a person or entity whose interest in the first matter is adverse to the client in the first matter.

Peterson argues that Harkavy represented the estate and accepted as a client the IRS, whose interest in the estate tax matter was adverse to the estate's interest in that matter, thereby violating clause (3) of Rule 3-310(C).

**[4]** This rule was not invoked by the estate in the Tax Court and was belatedly invoked in the Reply Brief in this court; therefore, we could decline to consider the argument based upon it. Out of an abundance of caution, we nevertheless asked the government to respond, and we therefore treat the question as properly before us. The estate relies on *American Airlines v. Sheppard, Mullin, Richter & Hampton*, 117 Cal. Rptr. 2d 685 (2002), which held that Rule 3-310(C) applied to a lawyer acting as an agent for one client in a way that jeopardized the secrets of an existing client.[2] The court's broad dictum is helpful to the estate, but must be read in con-

---

[2]Gregory A. Long, a lawyer, represented American Airlines in a claim against McDonnell-Douglas Corp. based on the performance of its MD-11 aircraft. Without filing suit, American Airlines eventually settled with McDonnell Douglas. During the same period, a Swiss aircraft broker, ADO, sued McDonnell-Douglas for deficiencies in the MD-11. At American Airlines' request, Long reviewed documents subject to production by McDonnell Douglas in this litigation; Long's assignment was to protect information that American considered confidential. Long further represented American in opposing a request for documents by ADO. Long was then sought by ADO as a witness in the litigation against McDonnell-Douglas. American objected but Long believed that the work would not be adverse to American and accepted the engagement by ADO as a witness under Fed. R. Civ. P. 30(b)(6). At a deposition, Long asserted the attorney-client privilege as to all questions related to American. ADO later settled with McDonnell-Douglas, but American sued Long and his law

junction with the facts of the case that the court decided; in it, the lawyer's agency for client #2 put at risk secrets that client #1 valued. Nothing of the sort occurred or could occur here. Even if we were bound by a single state court of appeals decision (which we are not) we would find it extravagant to extrapolate from *American Airlines* a rule that would effectively impede the IRS from obtaining the expert aid of practicing members of the tax bar.

**[5]** *Prejudice*. As a separate and alternative ground for our decision, Rule 91(e) of the Rules of Practice and Procedure of the United States Tax Court provides: "The Court will not permit a party to a stipulation to qualify, change, or contradict a stipulation in whole or in part, except that it may do so when justice requires." The holding by the Tax Court that there was no credible evidence of any adverse effect on the estate by the IRS's employment of Harkavy precludes the contention that justice requires setting aside the stipulated decisions.

AFFIRMED.

---

firm for breach of the duty of loyalty. The jury returned a verdict for American of $8,174. On appeal, Long argued that he had not represented ADO when he undertook to be a witness. The court of appeals disagreed. Long had a duty as a faithful agent to ADO and as a lawyer to American. Even though Long was "not engaged to render legal advice to ADO," he had breached Rule 3-310(C).